1  **LABATON KELLER SUCHAROW LLP**
   Jonathan Waisnor (CA 345801)
2  jwaisnor@labaton.com
   Alexander Schlow (Pro Hac Vice)
3  aschlow@labaton.com
   Morris Dweck (Pro Hac Vice)
4  mdweck@labaton.com
   140 Broadway, Floor 34
5  New York, NY 10005
   Telephone: 212-907-0700
6  Facsimile: 212-818-0477

7  **UMBERG ZIPSER LLP**
   Carole E. Reagan (Bar No. 162674)
8  creagan@umbergzipser.com
   1920 Main Street, Suite 750
9  Irvine, CA 92614
   Telephone: 949-679-0052
10 Facsimile: 949-679-0461

11 Counsel for Petitioners

12

13                    **UNITED STATES DISTRICT COURT**

14                    **CENTRAL DISTRICT OF CALIFORNIA**

15                         **SOUTHERN DIVISION**

16

17
   NICOLE AARON, et al.,                    | **CASE NO. 8:24-CV-01712 FWS-**
18                                          | **DFMx**
                        Petitioners,
19                                          | **OPPOSITION TO RESPONDENTS'**
                                            | **CROSS MOTION FOR LIMITED**
20 v.                                       | **DISCOVERY AND TO COMPEL**
                                            | **ARBITRATION IN FEDARB**
21 EPSON AMERICA, INC.,
22                        Respondent.       | Judge: Hon. Fred W. Slaughter
                                            | Date: February 27, 2025
23                                          | Time: 10:00 a.m.
                                            | Courtroom: 10D
24

25

26

27

28

---

# **<u>TABLE OF CONTENTS</u>**

**<u>Page</u>**

TABLE OF AUTHORITIES ..................................................................... iii

I.    PRELIMINARY STATEMENT .................................................... 1

II.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY ................. 3

    A.    Epson Engages in Extremely Deceptive and Unfair Anti-Consumer Behavior By Prohibiting Consumers From Using Non-Epson Ink ........................................................................ 3

    B.    Epson Customers, Including Petitioners, Notify Epson of Their Claims ....................................................................... 4

    C.    Epson Refuses to Engage in Good-Faith Negotiations And Attempts To Amend The SLA ........................................... 4

    D.    Petitioners' Good Faith Efforts to Resolve Disputes Culminate in Unsuccessful Mediation and Expiration of the Tolling Agreement ..... 6

    E.    Epson Materially Breaches Its Arbitration Clause After Being Ordered By JAMS to Arbitrate. ........................................ 6

    F.    Epson Rejects Proposals to Significantly Streamline This Litigation. ................................................................... 7

    G.    The State Court Confirms the SLA is the Controlling Agreement and Orders Epson to Arbitrate.......................................... 7

    H.    Epson Continues to Submit Declarations By Epson Employees That Contain Material Omissions and Misrepresentations ............. 8

III.  ARGUMENT................................................................... 8

    A.    Applicable Standard ...................................................... 8

    B.    Epson's Cross-Motion Must Be Denied Because Epson Cannot Demonstrate That Any Petitioner Agreed To The Amended SLA....... 9

    C.    The SLA Delegates All "Condition Precedent" Disputes To Arbitrators .................................................................. 10

    D.    Epson Has Shown No Basis For Additional Discovery..................... 11

    E.    *Coinbase v. Suski* Does Not Apply To These Facts............................ 12

    F.    Alternatively, Epson's Cross-Motion Must Be Denied Because Delegation Of Any Issues To FedArb Is Unconscionable................. 13

        1.    FedArb's Mass Arbitration Framework Is Substantively Unconscionable......................................................... 13

-i-

2.    Epson's Contract Of Adhesion, Amendment Process, And Incorporation Of FedArb's Incomprehensible Rules Are Procedurally Unconscionable .................................................. 17

3.    Alternatively, FedArb's ADR-MDL Process Is Unenforceable Under California's *Discover Bank* Rule. ......... 21

4.    Should The Amended SLA Apply, The Offending Provisions Should Be Severed And Petitioners' Claims Sent To JAMS ...................................................................... 22

CONCLUSION ...................................................................... 23

-ii-

OPPOSITION TO RESPONDENTS' CROSS MOTION FOR LIMITED DISCOVERY AND TO COMPEL ARBITRATION IN FEDARB
Case No. 8:24-CV-01712 FWS-DFMx

1

# **TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Cases**

4

*Adams v. Postmates, Inc.*,
5   414 F. Supp. 3d 1246 (N.D. Cal. 2019)........................................................6, 7, 10

6
*Barnes v. City of Centralia*,
7   943 F.3d 826 (7th Cir. 2019) ..............................................................................9, 11

8
*Batchuluun v. Blizzard Ent. Inc.*,
9   Orange County, Ca. Super. Ct. No. 30-2021-01421288-PO-CJC.....................20

10
*Beltran v. PeopleReady, Inc.*,
    No. 3:23-CV-00179- WHO, 2023 WL 3092973 (N.D. Cal. Apr. 25,
11   2023) ...............................................................................................................11

12
*BG Group PLC v. Republic of Arg.*,
13   572 U.S. 25 (2014)...............................................................................................10

14
*Caviani v. Mentor Graphics Corp.*,
15   No. 19-cv-01645-EMC, 2019 U.S. Dist. LEXIS 160105................................12

16
*Circuit City Stores, Inc. v. Najd*,
17   294 F.3d 1104 (9th Cir. 2002) ..............................................................................10

18
*Coinbase, Inc. v. Suski*,
19   602 U.S. 143 (2024)........................................................................................11, 12

20
*Discover Bank v. Superior Court*,
21   113 P.3d 1100 (Cal. 2005)...............................................................................21, 22

22
*Galgon v. Epson Am., Inc.*,
    No. 2:2021-cv-01794, 2021 WL 4513638 (C.D. Cal. June 16, 2021) ........*passim*
23

*Hansen v. LMB Mortg. Servs.*,
24   1 F.4th 667 (9th Cir. 2021) ...................................................................................9

25
*Heckman v. Live Nation Entertainment, Inc.*,
26   120 F.4th 670 (9th Cir. 2024) ........................................................................*passim*

27
*Heckman v. Live Nation Entm't, Inc.*,
28   686 F. Supp. 3d 939 (C. D. Cal. 2023) ………..............................................20

*Howsam v. Dean Witter Reynolds*,
    537 U.S. 79 (2002)........................................................................10

*Johnson v. Walmart Inc.*,
    57 F.4th 677 (9th Cir. 2023) ..........................................................8

*Kilgore v. KeyBank Nat'l Ass'n*,
    718 F.3d 1052 (9th Cir. 2013) ........................................................8

*Mobile Emergency Hous. Corp. v. HP, Inc.*,
    Case No. 20-cv-09157-SVK, 2021 WL 9867952 (N.D. Cal. Oct. 15,
    2021) ............................................................................................3

*Mondigo v. Epson America, Inc.*,
    Case No. 20-cv-4400, 2020 WL 8839981 (C.D. Cal. Oct. 13, 2020)....1, 3, 9, 12

*New Prime Inc. v. Oliveira*,
    586 U.S. 105 (2019).......................................................................21

*Olaka v. Citibank, N.A.*,
    No. 8:24-cv-00494-FWS-DFM, 2024 U.S. Dist. LEXIS 88721 (C.D.
    Cal. May 15, 2024) ....................................................................9, 11

*Oracle Am., Inc. v. Myriad Grp. A.G.*,
    724 F.3d 1069 (9th Cir. 2013) ......................................................12

*Pierre v. IEC Corp.*,
    No. 8:22-CV-01280-FWS-JDE, 2023 WL 3551962 (C.D. Cal. Mar.
    14, 2023) ....................................................................................11

*Robinson v. HP, Inc.*,
    Case No. 1:24-cv-00164 (N.D. Ill.) ..................................................3

*Tinder v. Pinkerton Security*,
    305 F.3d 728 (7th Cir. 2002) ..........................................................9

*Turng v. Guaranteed Rate, Inc.*,
    371 F. Supp. 3d 610 (N.D. Cal. 2019)..............................................22

*United States v. Hove*,
    52 F.3d 233 (9th Cir. 1995) ..........................................................10

-iv-

OPPOSITION TO RESPONDENTS' CROSS MOTION FOR LIMITED DISCOVERY AND TO COMPEL ARBITRATION IN FEDARB
Case No. 8:24-CV-01712 FWS-DFMx

**Statutes/Rules**

15 U.S.C. §1 ........................................................................................................3

18 U.S.C. §1030 .................................................................................................3

Cal. Civ. Code §1770(a)(4)-(5), (9).....................................................................3

Fed. R. Civ. P. 8(a)(1) ...............................................................................15, 16

1

## **MEMORANDUM OF POINTS AND AUTHORITIES**

2

## **I.    PRELIMINARY STATEMENT**

3   Four tribunals have already determined Petitioners' disputes with Epson should

4   be individually arbitrated before JAMS, even if Epson now finds its arbitration

5   obligations inconvenient or costly.  Epson's cross-motion is simply the latest chapter

6   in Epson's nearly two-year campaign of delay to avoid the very arbitration agreement

7   it went to this Court to enforce – *twice*.  *Mondigo v. Epson America, Inc*., Case No. 20-

8   cv-4400, 2020 WL 8839981 (C.D. Cal. Oct. 13, 2020); *Galgon v. Epson Am., Inc.*, No.

9   2:2021-cv-01794, 2021 WL 4513638 (C.D. Cal. June 16, 2021).  Epson prevailed on

10  its arguments that a JAMS arbitrator must decide all disputes between it and its

11  customers, including disputes as to arbitrability.  At this point, only mandatory

12  sanctions will deter Epson from its campaign of stonewalling, judicial inefficiency and

13  wasteful litigation.

14  Epson's commitment to the arbitration process it chose only lasted while Epson

15  believed it had an unassailable advantage.  When thousands of Petitioners, following

16  the letter of Epson's Software License Agreement ("SLA")[1], noticed arbitrations before

17  JAMS, Epson balked.  It scrambled to introduce a procedurally unconscionable

18  unilateral amendment to its arbitration clause ("Amended SLA")[2], claiming that this

19  amendment created "arbitrability and jurisdiction" disputes for the courts to resolve.

20  When JAMS dispensed with this manufactured controversy and held that Petitioners

21  had established an agreement to arbitrate with Epson under the SLA, Epson defaulted

22  on its JAMS invoice and sued thousands of Petitioners.

23

24  _____

25  [1] The SLA is attached to Petitioners' Amended Petition to Compel Arbitration (ECF No. 28, "Petition") as Exhibit B.

26  [2] The Amended SLA is Exhibit F to the Declaration of Megha Shukla filed in support

27  of Epson's cross-motion (ECF No. 34-16, "Shukla Dec.").

28

The state court in those suits was the fourth tribunal to reject Epson's evasion of its arbitration obligations. Like JAMS, it held that individuals who presented Epson model and serial numbers had sufficiently met their minimum burden to show the formation of the SLA and that all of Epson's remaining arguments were unambiguously delegated to JAMS arbitrators rather than any Court.

Now, Epson looks for a fifth bite at the apple. After admitting that it has *no records whatsoever that any Petitioner agreed to its Amended SLA*, Epson hopes that this Court will order individualized discovery into the frivolous "amendment" dispute it created. But Epson has made no *prima facie* showing that the Amended SLA applies. That is the end of the line for Epson.

Indeed, no discovery is necessary because as a matter of law, Epson's "mass arbitration" provision is unenforceable regardless. Epson studiously avoids any discussion about the FedArb rules it attempted to impose after it received notice of the claims, other than to trumpet how it reduces Epson's own costs. However, the FedArb clause was imposed in an extremely procedurally unconscionable manner, and invokes confusing, inconsistent, and convoluted mass arbitration rules promulgated by FedArb. The FedArb ADR-MDL Framework For Mass Arbitration Proceedings (Waisnor Decl.[3], Ex. X, the "Framework") Epson imposed is rife with one-sided, defendant-friendly rules and procedures that trample consumers' due process rights. A nearly identical "mass arbitration" framework imposed during pending litigation was recently held unenforceable by the Ninth Circuit in *Heckman v. Live Nation Entertainment, Inc*., 120 F.4th 670 (9th Cir. 2024). Following *Heckman*, the mass arbitration provision in the Amended SLA should be stricken, and individual arbitration compelled at JAMS.

---

[3] Citations to the "Waisnor Decl." refer to the Declaration of Jonathan Waisnor In Support Of Petitioners' Opposition to Respondent's Cross-Motion for Limited Discovery and to Compel Arbitration in FedArb filed herewith.

## II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A.    Epson Engages in Extremely Deceptive and Unfair Anti-Consumer Behavior By Prohibiting Consumers From Using Non-Epson Ink

### B.

Petitioners' federal and state claims against Epson arise out of Epson's practice of "updating" the firmware and software in Petitioners' Epson printers to prevent those printers from using inexpensive, non-Epson ink cartridges.  Epson imposes these "updates" on its customers without disclosing that they will essentially disable the printer if third-party ink is used, either locking its customers into buying more expensive ink from Epson or making their printers unusable—an anti-competitive practice that violates state and federal antitrust and consumer protection laws, as well as the federal Computer Fraud and Abuse Act.  15 U.S.C. §1; Cal. Civ. Code §1770(a)(4)-(5), (9); and 18 U.S.C. §1030.  HP, Inc., one of Epson's competitors in the consumer printer market, lost a motion to dismiss similar allegations and recently reached a classwide settlement of the claims.  *See Mobile Emergency Hous. Corp. v. HP, Inc.*, Case No. 20-cv-09157-SVK, 2021 WL 9867952 (N.D. Cal. Oct. 15, 2021) (largely denying motion to dismiss); *Robinson v. HP, Inc.*, Case No. 1:24-cv-00164 (N.D. Ill.).

Epson required all consumers who purchase and set up one of its printers to agree to the SLA, which includes a mandatory arbitration clause.  SLA at §14.6. The SLA also has an expansive delegation clause, under which "[t]he arbitrator, and not any federal, state or local court or agency, shall have exclusive authority to resolve all disputes arising out of or relating to the interpretation, applicability, enforceability or formation of th[e] Agreement, including any claim that all or any part of th[e] Agreement is void or voidable." *Id.*

When Epson faced putative class actions stemming from the same facts

Petitioners allege, it successfully compelled those disputes to arbitration before JAMS. *See Mondigo*, 2020 WL 8839981; *Galgon*, 2021 WL 4513638. In those actions, Epson correctly argued the arbitrator, and not a court, decides all disputes between the parties, including disputes as to arbitrability like the scope of the issues that were for the arbitrator as opposed to the courts. *See id*.; SLA §§14.1, 14.6.

### C.   Epson Customers, Including Petitioners, Notify Epson of Their Claims

On August 31, 2022, 919 *Arnoff* Petitioners,[4] 429 *Aaron* Petitioners,[5] and other Epson customers represented by undersigned counsel,[6] mailed a notice of dispute to Epson. The notice contained exactly what Epson's SLA required: the name, address, and contact information of the sender (Petitioners' counsel), and the details of Petitioners' claims, including specific alleged statutory and common law violations. *Id*; SLA §14.3. Petitioners' counsel emailed Epson's counsel the same day to inform them of Petitioners' Dispute Notice. Waisnor Decl. Ex. A. On September 22, 2022, Petitioners' counsel sent a Dispute Notice on behalf of the remaining 914 *Arnoff* Petitioners, 409 *Aaron* Petitioners and several other Epson customers[7], containing the same information as the prior notice. Waisnor Decl., ¶9.

### D.   Epson's Refuses to Engage in Good-Faith Negotiations And Attempts To Amend The SLA

Epson responded on September 16, 2022, demanding Petitioners provide seven categories of transactional information, documentary evidence, a "narrative response identifying any and all disclosures he or she saw on product packaging, online, or

---

[4] The *Arnoff* Petitioners are 1,821 individuals Epson admitted were Epson customers in the *Arnoff* state court action. Petition, Ex. L.
[5] The *Aaron* Petitioners are 1,263 individuals who filed the August 6, 2024 petition to compel arbitration in this matter.
[6] 6,571 total Epson customers were included in the August notice letter.
[7] 6,802 Epson customers were included in the September notice letter.

through other media," their understanding of such disclosures at the time of purchase or when downloading updates, and an "individual damages calculation and demand," none of which was called for by the SLA's Notice Provision or would even be required to file an arbitration demand.  Waisnor Decl. Ex. C.

Realizing that it was likely to face arbitrations, Epson attempted to amend the SLA to rewrite the rules in its favor.  As relevant here, Epson's Amended SLA included burdensome pre-dispute notice and negotiation provisions not present in the SLA, an entirely new "mass arbitration" provision designating FedArb as the arbitration provider for large groups of claimants, and eliminated Epson's previous agreement to pay a prevailing consumer $1,000 in liquidated damages plus attorneys' fees. Amended SLA, §22.6(h).  Individual claims would still go to JAMS.  *Id.* §22.6(g).  The Amended SLA also purported to apply retroactively to claims not yet filed, even if Epson was already on notice of those claims.  *Id.* §22.1.

Like the SLA, the Amended SLA includes a broad delegation clause under which "[t]he arbitrator, and not any federal, state or local court or agency, shall have exclusive authority to resolve all disputes arising out of or relating to the interpretation, applicability, enforceability or formation of th[e] Agreement, including any claim that all or any part of th[e] Agreement is void or voidable."  *Id.* §22.6(a).  Though the Amended SLA purports to carve out issues from this delegation clause including satisfaction of conditions precedent and the enforceability of the mass arbitration provisions, the Amended SLA, like the SLA, left the question of what issues fall within these carveouts to the arbitrator.

On September 20, 2022, Petitioners' counsel notified Epson that the changes Epson was making to the "SLA, including to the Notice Provision and the substantive rules governing arbitrations against it [are] . . . unenforceable, especially considering Epson's obligation to negotiate 'in good faith' under Section 14."  *Id.*  Epson did not

OPPOSITION TO RESPONDENTS' CROSS MOTION FOR LIMITED DISCOVERY AND TO COMPEL ARBITRATION IN FEDARB
Case No. 8:24-CV-01712 FWS-DFMx

include the Amended SLA in any printer or firmware update until at least October 2022. Shukla Decl. ¶16.

### E.    Petitioners' Good Faith Efforts to Resolve Disputes Culminate in Unsuccessful Mediation and Expiration of the Tolling Agreement

Over the next thirty days, the Parties continued to communicate regarding Petitioners' disputes. Waisnor Decl. ¶¶8-12. Eventually, on or about November 17, 2022, the Parties entered into a tolling agreement and agreement to mediate. Waisnor Decl. Ex. H. While Petitioners agreed to produce model and serial numbers to the extent they possessed them, Epson refused to produce any information or data or to confirm the model or serial number of any of the producing Petitioners. *Id.*

On January 3, 2023, pursuant to the Tolling Agreement, 1,047 *Arnoff* Petitioners produced 1,044 printer models and 877 serial numbers, and 394 *Aaron* Petitioners produced 394 printer models and 371 serial numbers as part of a larger production. Waisnor Decl. Ex. G. The Parties mediated in February 2023 with Robert A. Meyer, Esq. of JAMS, but did not reach settlement. The Tolling Agreement expired on March 1, 2023.

### F.    Epson Materially Breaches Its Arbitration Clause After Being Ordered By JAMS to Arbitrate

On March 6, 2023, the 1,821 *Arnoff* Petitioners along with 2,161 other claimants (not parties to this litigation) filed arbitrations with JAMS pursuant to SLA section 14.6. Waisnor Decl., ¶18. Pursuant to JAMS rules and the SLA's arbitration clause, each demand was filed individually. *See* JAMS Policy Regarding Mass Arbitration Filings, *available at* https://www.jamsadr.com/blog/2023/jams-policy-regarding-mass-arbitration-filings.

One week later, Epson filed the *Arnoff* and *Adams* actions in Orange County Superior Court. In the *Arnoff* complaint, Epson admitted the *Arnoff* Petitioners were Epson customers. Petition, Ex. L.

After letter briefing, JAMS accepted administration of the *Arnoff* Petitioners'
arbitrations over Epson's objections, and afforded Epson the opportunity to raise
jurisdiction and arbitrability with merits arbitrators.  On April 7, 2023, JAMS invoiced
Epson for these Petitioners' case initiation fees.  Petition, Ex. N.  Epson never paid,
and affirmatively confirmed to JAMS that it had no intention of doing so.  Petition, Ex.
O.  JAMS closed the *Arnoff* arbitrations on June 5, 2023 based on Epson's nonpayment
of fees.  Petition, Ex. P.

### G. Epson Rejects Proposals to Significantly Streamline This Litigation

Before this Petition was filed, Petitioners asked Epson to resolve "the current
pre-arbitration disputes before a JAMS Process Administrator, adhering to the JAMS
Mass Arbitration Procedures and Guidelines" first introduced on May 1, 2024.  Exhibit
X.  This process would permit the resolution of certain arbitrability disputes by a
"process administrator," with Epson paying only a single fee of approximately $5,000
(plus fees for the process administrator's time) regardless of the number of consumers
who file arbitrations.   Epson declined.  Waisnor Decl. ¶¶18-20 and Exs. I, J, AA.

### H. The State Court Confirms the SLA is the Controlling Agreement and Orders Epson to Arbitrate

On November 12, 2024, the state court issued a Statement of Decision in the
*Adams* action.  Waisnor Dec, Ex. P.  The state court found "in the absence of evidence
of such download, [the Amended SLA] cannot be established as to any [Petitioner],
**even if Section 14 of [the SLA] did not have the clause stating that said Section 14
survives the termination of [the SLA].**  As such, [the SLA] must apply; and Section
14, which by its own terms "shall survive the termination of this Agreement", must
control." *Id*. at 24.

Accordingly, the state court found that [the SLA] . . . is the controlling
Agreement," and therefore "[p]ursuant to the requirements of [the SLA], . . . the

Arbitrator shall determine whether or not the "Pre-Arbitration Steps and Notice" set forth in Section 14.3 of Exhibit 1 have been satisfied." *Id.*

## I.    Epson Continues to Submit Declarations By Epson Employees That Contain Material Omissions and Misrepresentations

Epson's arguments about the introduction of the Amended SLA rely on the Shukla Declaration.  But Ms. Shukla's description of the firmware update process is misleading.  Ms. Shukla claimed in her declaration that "[o]nce a user initiates the update, the user is automatically presented with the then-operative version of Epson's EULA, which they are encouraged to review carefully."  Shukla Decl. ¶14.  However, many Epson printers can be updated directly from the printer's control panel.  *See* Waisnor Decl. ¶36.  A user who updates their printer's firmware in this way is not presented with the agreement.  Instead, the printer displays a URL the user must manually enter on a separate device to view the agreement.  *Id.*

More importantly, Ms. Shukla confirmed that Epson only rolled out its Amended SLA beginning in October 2022, *after* Petitioners noticed Epson of all of their claims, a statement omitted from her declaration in state court.  Shukla Decl. ¶16.  She also confirmed that Epson cannot "track when or if individual users download any firmware update or agree to any EULA," and that "Epson does not have records of the date on which any user initiated such a firmware update and agreed to the now-current EULA." *Id.* ¶17.

## III.    ARGUMENT

### A.    Applicable Standard

On a motion to compel arbitration, a court should "determine '(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue.'" *Kilgore v. KeyBank Nat'l Ass'n*, 718 F.3d 1052, 1058 (9th Cir. 2013) (quoting *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir.

2000)).  "If the court answers both questions in the affirmative, it must enforce the arbitration agreement."  *Johnson v. Walmart Inc.,* 57 F.4th 677, 680-81 (9th Cir. 2023) (internal quotation marks omitted).  Only where "there are genuine disputes of material fact as to whether the parties formed an arbitration agreement" is fact-finding or further evidence required.  *Hansen v. LMB Mortg. Servs.*, 1 F.4th 667, 672 (9th Cir. 2021).

## B.  <u>Epson's Cross-Motion Must Be Denied Because Epson Cannot Demonstrate That Any Petitioner Agreed To The Amended SLA</u>

Each Petitioner has alleged that they agreed to arbitrate with Epson under the SLA, via the same process of formation held in *Mondigo* and *Galgon*, and has provided specific facts about the printers they purchased through a sworn declaration or other information on their printer purchase.  *See generally* Petition, Exs. A and C1-C20; *Arnoff* Compl. ¶1.  Petitioners' showing is more than sufficient to demonstrate that the SLA applies to Petitioners' claims, and their sworn facts are effectively uncontested.

Epson concedes that:  (i) each *Arnoff* Petitioner is an Epson customer; (ii) prior to October 2022, everyone who purchased and set up an Epson printer agreed to the SLA;  (iii) it did not introduce the Amended SLA into its software updates until October 2022; (iv) acceptance of the Amended SLA as part of the update process is voluntary, requires affirmative assent, and does not occur automatically; and (v) it has *no records whatsoever* that *any* Petitioner agreed to the Amended SLA.  Shukla Decl. ¶17   Thus, the *only* evidence in the record that any Petitioner assented to arbitration is Petitioners' submissions establishing their assent to the SLA.

Epson "cannot avoid compelled arbitration by generally denying the facts upon which the right to arbitration rests," *Tinder v. Pinkerton Security,* 305 F.3d 728, 735 (7th Cir. 2002), or by raising "some metaphysical doubt as to the material facts." *Barnes v. City of Centralia*, 943 F.3d 826, 832 (7th Cir. 2019) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).  Since Epson does

not have records showing that *any* Petitioner agreed to the Amended SLA (Shukla Decl. ¶17), its only argument is "metaphysical doubt." *See, e.g., Olaka v. Citibank, N.A.*, No. 8:24-cv-00494-FWS-DFM, 2024 U.S. Dist. LEXIS 88721 at *5 (C.D. Cal. May 15, 2024) (denying motion to compel where defendant "fails to provide sufficient evidence demonstrating both that Plaintiff signed the [agreement to arbitrate] and that this iteration of the [agreement] was the same agreement provided to Plaintiff at the" relevant time) (citing *Knutson v. Sirius XM Radio, Inc.*, 771 F.3d 559, 565 (9th Cir. 2014)).

Epson assets that "639 petitioners, [by] their own sworn admissions, confirm that they are subject to Epson's current EULA." Cross-Motion at 16. No such admissions exist. Petitioners' attestations read in part: "I have not affirmatively assented to any updates to my Epson Printer Software License Agreement since September 1, 2022." Petition, Ex. C1. 639 Petitioners did not check the box next to this statement. However, this silence does not constitute an admission or acceptance. *United States v. Hove*, 52 F.3d 233 (9th Cir. 1995); *see also Circuit City Stores, Inc. v. Najd*, 294 F.3d 1104 (9th Cir. 2002). This omission more fairly suggests that these Petitioners either cannot recall the exact date on which they updated their printers or did not recall whether the update contained the Amended SLA. It is not evidence they affirmatively accepted the Amended SLA.

## C.    The SLA Delegates All "Condition Precedent" Disputes To Arbitrators

Epson argues that this Court must resolve the issue of whether Petitioners complied with the notice provision even under the SLA. Cross-Motion at 14. But the SLA's delegation of arbitrability to the arbitrator nullifies this argument. *See, e.g., Adams v. Postmates, Inc.*, 414 F. Supp. 3d 1246, 1254–55 (N.D. Cal. 2019) (delegation of arbitrability to arbitrator in a matter involving thousands of individual arbitrations

1    includes issue of satisfaction of conditions precedent).  Moreover, even in the absence

2    of a comprehensive delegation clause like the SLA's, "conditions precedent to an

3    obligation to arbitrate" are "presumptively for the arbitrator, not the judge."  *Howsam*

4    *v. Dean Witter Reynolds*, 537 U.S. 79, 84–85 (2002); *see also, e.g., BG Group PLC v.*

5    *Republic of Arg.*, 572 U.S. 25, 34-35 (2014) (same).

6    ### D.    <u>Epson Has Shown No Basis For Additional Discovery</u>

7        Epson requests burdensome, individualized discovery into each Petitioner's

8    interactions with their Epson printer. Cross-Motion at 16-17.  Epson's requested

9    remedy runs afoul of the FAA.  Discovery is necessary only "if 'a district court

10    concludes that there are genuine disputes of material fact as to whether the parties

11    formed an arbitration agreement.'"  *Olaka*, 2024 U.S. Dist. LEXIS 88721, at *3

12    (quoting *Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 672 (9th Cir. 2021).  Where,

13    as here, the proponent of arbitration has shown an agreement to arbitrate (the SLA) and

14    the party opposing does nothing more than "deny facts," without additional support or

15    proof, no additional discovery is warranted.  *Barnes,* 943 F.3d at 832.

16        Epson's authority on discovery (*see* Cross-Motion at 17) misses the mark,

17    because in those cases discovery was *necessary* to resolve formation disputes.  In

18    *Beltran v. PeopleReady, Inc*., No. 3:23-CV-00179- WHO, 2023 WL 3092973 (N.D.

19    Cal. Apr. 25, 2023), a "contract appear[ed] to show [Plaintiff's] electronic signature,"

20    – the prima facie showing Epson has *not* made here – and Plaintiff denied being "given

21    the opportunity to see or review the document," creating a genuine issue as to formation

22    requiring additional discovery.  *Id.* at *6.  Similarly, in *Pierre v. IEC Corp.*, No. 8:22-

23    CV-01280-FWS-JDE, 2023 WL 3551962 (C.D. Cal. Mar. 14, 2023), the defendant

24    made a *prima facie* showing through detailed, individualized records (the kind Epson

25    admits it doesn't have) that someone using Plaintiff's name electronically signed an

26    arbitration agreement, and the plaintiff made a credible showing that someone else used

27

28

her name to sign. *Id.* at *4-5. Here, by contrast, it is undisputed that each Petitioner has agreed to the SLA, and Epson "fails to provide" *any* evidence, much less "sufficient evidence . . . that [any Petitioner] signed the" Amended SLA. *Olaka,* 2024 U.S. Dist. LEXIS 88721, at *5.

### E.   *Coinbase v. Suski* Does Not Apply To These Facts

Epson also contends, citing *Coinbase, Inc. v. Suski*, 602 U.S. 143 (2024), that "this Court—not JAMS—must first determine which EULA applies to each petitioners' claims." Cross-Motion at 14. Epson is incorrect. *Coinbase* applies only where it is established or undisputed that "parties have multiple agreements that . . . conflict as to the . . . question of who decides arbitrability." 602 U.S. at 149; *see id.* at 146-47 (record established the parties had "agreed to a second contract"). Here, no contract other than the SLA has been established, and both agreements delegate all questions of arbitrability to a JAMS arbitrator, as the *Mondigo* and *Galgon* courts both held. *Mondigo,* 2020 WL 8839981, at *3 (quoting *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1209 (9th Cir. 2016)); *Galgon*, 2021 WL 4513638, at *4. Further, both agreements incorporate the JAMS rules by reference. SLA ¶14.6; Amended SLA at §22.6(g). "[I]n this circuit, incorporation of, *e.g.*, JAMS rules by reference" establishes "a clear and unmistakable agreement to delegate the question of arbitrability to the arbitrator." *Caviani v. Mentor Graphics Corp.*, No. 19-cv-01645-EMC, 2019 U.S. Dist. LEXIS 160105 at *13 (collecting cases).

Epson's argument that the additional delegation carveouts in the Amended SLA require this Court to first determine which agreement applies "conflates the *scope* of the arbitration clause, i.e., which claims fall within the carve-out provision, with the question of *who* decides arbitrability." *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1076 (9th Cir. 2013). Under a delegation clause like these, the scope of carveouts is for the arbitrator. *Coinbase* does not apply.

**F.**     **Alternatively, Epson's Cross-Motion Must Be Denied Because Delegation Of Any Issues To FedArb Is Unconscionable**

Petitioners' arbitration agreements with Epson, headquartered in California, are subject to California unconscionability law. *See, e.g., Heckman*, 120 F.4th at 689 (analyzing arbitration provision imposed on California customers by large company under the FAA and holding that California unconscionability laws were not preempted by the FAA). An arbitration agreement is unenforceable if it is substantively and procedurally unconscionable, with a greater showing in one category sufficient to overcome a relatively weak showing in the other. *Id.* at 680-81.

In *Heckman*, the Ninth Circuit affirmed the denial of a defendant's motion to compel arbitration to New Era, a forum plagued by vague, inconsistent, and self-contradictory "Mass Arbitration/Expedited Rules." *Heckman's* holding applies with equal force to FedArb and its Framework, as discussed below.

**1.**     **FedArb's Mass Arbitration Framework Is Substantively Unconscionable**

"Substantive unconscionability pertains to the fairness of an agreement's actual terms and to assessments of whether they are overly harsh or one-sided." *Id.* at 683 (internal quotation marks omitted). All of the indications of substantive unconscionability present in *Heckman* are present here.

*The mass arbitration protocol, including potentially secret precedential decisions*: New Era's rules provided that "New Era, and only New Era, will unilaterally decide to group, or 'batch' similar cases." *Id.* at 678. Next, New Era's rules required three bellwether arbitrations from each batch, the decisions in which became "'precedent' on all common issues in the batched cases, as well as in any later-filed cases added to the batch." 120 F.4th at 678. As the Ninth Circuit observed:

> Though decisions in bellwether cases are precedential, the arbitration hearing and award in those cases proceed individually and are confidential, known only to the

particular plaintiffs, to the defendant company, and to the arbitrator [and] [d]ecisions by the arbitrator in a bellwether case that favors a defendant will thus be binding on non-bellwether plaintiffs, who had no chance to participate in the arbitration and who are ignorant of the decision until it is invoked against them.

*Id.* at 678-79.

FedArb's Framework provides even less procedural protection for consumers regarding batching. FedArb, and only FedArb, determines when "20 or more individual claims by employees or consumers are submitted for arbitration by or with the assistance or coordination of the same law firms or organizations and where the claims are subject to a common set of factual and legal issues." Framework at 1. The Framework does not explain how FedArb will determine "assistance or coordination." Further, Section 1(e) provides for a three-arbitrator tribunal "selected from FedArb's panel" to decide, among other things, "any dispositive motion," "all common issues of fact or law," and "any other motion either side deems relevant," without providing any guidance as to how the members of this tribunal will be chosen, much less a mechanism to ensure that the selection is fair. *Id.* at 2-3.

Once the tribunal has decided these issues, Sections 1(f) and 1(g) state that claimants may "proceed to individual arbitration" while still bound by the tribunal's decisions which are "dispositive" with no right to appeal. *Id.* Section 2 of the Framework purports to allow "[i]ndividuals wishing to submit a non-mass claim" to do so, but paradoxically states that "FedArb's Mass Arbitration [sic] Framework" will *still* apply to "all such individual claims" if "more than 20 individual claims involving substantially identical factual and legal claims are filed," *whether or not* those claims are brought by the same counsel, making this a wholly illusory "opt-out." *Id.* It is thus impossible for potential claimants to know whether their claims would be grouped together as a single "Mass Arbitration," or whether they might be subject to

-14-

confidential "precedent" decided before their claims were even filed.  "Notably, this lack of access is asymmetrical: the defendant will always have access to the record." *Heckman*, 120 F.4th at 679.  "It is black-letter law that binding litigants to the rulings of cases in which they have no right to participate—let alone case of which they have no knowledge—violates basic principles of due process." *Id.* at 685.

*Asymmetric procedural rights*:  New Era's rules provided an impermissible unilateral appeal of a grant for injunctive relief, which *Heckman* held was unconscionable. *See Heckman*, 120 F. 4th at 686-87.  Section 1(c) of the Framework is worse.  It provides that *defendant* (but *not* a claimant) has a right to "fil[e] a Pre-Filing Fee Motion" which can expressly raise a defense of "lack of arbitrability" or failure to state a claim.  No such pre-fee option for a determination of arbitrability or the merits is available to claimants compelled to arbitrate before FedArb.  This provision is undeniably substantively unconscionable.  *Heckman*, 120 F.4th at 686-87.

Additionally, though the Federal Rules of Civil Procedure require simply a "short and plain statement of the claim," (Fed. R. Civ. P. 8(a)(1)) and the JAMS rules require even less detail, a consumer who can locate FedArb's rules and whose claim has not been barred by secret proceedings conducted by a closed tribunal faces multiple additional hurdles.  The Framework states, "only claimants who have both completed the requisite identifying information and complied with all prefiling requirements are allowed to file a claim," but does not explain what the "requisite identifying information" or "prefiling requirements" are.  Framework, §1(b).  Next, the Framework at different points makes reference to:  (i) a "customer or employee claim form" (§1(a)) the company must submit; (ii) a "claims form" (§1(e)) which the Tribunal is supposed to develop to calculate individual damages; (iii) a "Claims Submission Form" (§1(f); capitalization in original) for claimants to submit with unspecified information "needed to process their claim;" and (iv) a "claims submission form" (§2, lower case in

original), which a claimant seeking to "submit a non-mass claim" must "fully complete and submit . . . as directed by the Company." *Id.* It is unclear how many of these references (if any) are to the same document; none of these forms are reproduced in the Framework or available on FedArb's website. The Framework does not explain what information the forms require, how failing to submit them might affect Petitioners' rights, or how Petitioners could challenge the company's deployment of an unfair or unduly burdensome form.

*Procedural limitations, including starkly abbreviated discovery*: The Ninth Circuit in *Heckman* also criticized the paltry discovery permitted under New Era's rules, another feature FedArb adopted. New Era provided no automatic right to discovery or provision for requests except in the discretion of the arbitrator. *Id.* Similarly, FedArb's Expedited "rules" (see below) referenced by the Framework prohibit depositions except by agreement, prohibit "motions to enforce discovery requests" in most circumstances, and allow document discovery only through voluntary production of "all documents discoverable under federal discovery standards," apparently on the honor system. Ex. __. Such restrictions are substantively unconscionable. *Heckman,* 120 F.4th at 684.

*Unfair arbitrator selection process*: *Heckman* found that New Era's rules for selecting arbitrators violated California law in at least three ways: "(1) New Era has the power to override a claimant's decision to disqualify an arbitrator; (2) each side, rather than each individual party, has a right to disqualify an arbitrator; and (3) a single arbitrator presides over several cases at one time." *Id.* at 687. FedArb's Framework contains the same violations: (1) Section 1(e) of the Framework states the three-arbitrator tribunal will be "selected from FedArb's panel", with no specified selection process or disclosures required by California law; apparently FedArb will unilaterally select all three. Section 1(c) states that: (1) where a single arbitrator is appointed to

hear a defendant's unconscionable unilateral pre-fees motion, that arbitrator will be appointed "by FedArb in consultation with the parties' counsel" (with no description of what "consultation" means and again with no provisions for disclosures); (2) FedArb's Framework contains *no* provisions for disqualification of arbitrators, despite such a right being required, for each party, under California law; and (3) FedArb allows its pre-fee motion arbitrator and its three-arbitrator tribunal to preside over *all* cases deemed to be part of a "mass arbitration" at once. Such provisions are unenforceable under California law. *Heckman*, 120 F.4th at 684.

This substantive unconscionability is a feature of the business model shared by New Era and FedArb. As relevant here, "New Era offered a subscription option under which a client company pays an annual subscription fee" for access to its mass arbitration framework. *Id.* at 677. FedArb similarly requires an "annual subscription for the mass arbitration administration." Framework at §1(a). Unlike individual arbitrators, who are paid based on the hours they spend on each case, FedArb earns a "subscription fee" from each corporate defendant who uses its platform, giving it an extraordinary financial incentive to offer overwhelmingly defendant-friendly procedures at the expense of Petitioners' due process rights.

### 2. Epson's Contract Of Adhesion, Amendment Process, And Incorporation Of FedArb's Incomprehensible Rules Are Procedurally Unconscionable

"In deciding procedural unconscionability, California courts focus on the factors of oppression and surprise." *Heckman*, 120 F.4th at 681 (internal quotation marks and alterations omitted). In *Heckman*, the defendant company, a large event ticket seller, compelled an antitrust class action to individual arbitration at JAMS under one online terms of service. *See generally id.* Like in this case, after the company was on notice of potential arbitrations, it changed its arbitration clause to add a "mass arbitration" protocol. *Id.* at 676. The Court held these changes were "procedurally unconscionable

to an extreme degree." *Id*. at 687.

The same procedural unconscionability exists here.  As to "oppression," Petitioners' claims arose, and Petitioners provided notice thereof, prior to the Amended SLA's introduction, making the Amended SLA's retrospective application to them oppressive and unfair.  Further, in *Heckman*, consumers were required to accept the terms even if they'd already transacted business with the company, for example, to access tickets they had already purchased.  *Id*. at 682-683.  Similarly, the arbitration clause in the Amended SLA is presented as part of a firmware update that Epson makes to printers Petitioners purchased under the SLA, and which Epson itself claims helps printers function properly, but Petitioners allege is a scheme to block them from using cheaper ink.  Shukla Decl. ¶5.  In other words, Epson attempted to force the Amended SLA onto consumers as part of the same unfair and unlawful practices giving rise to Petitioners' underlying disputes.

As to "surprise," *Heckman* found the company's terms affirmatively misleading because they stated that claims would be resolved in individual arbitration and not in any "class or representative" proceeding, whereas the New Era rules provided for "batching" claims into groups based on common issues of law and fact. 120 F.4th at 683.  Similarly here, the Amended SLA states that the arbitration "waives your right to participate in class actions or class arbitrations."  Only by scrolling down to Section 22 of the Amended SLA, and then referenced FedArb's confusing Framework through its website, would a consumer learn that the Amended SLA might subject them to batching and mass adjudication.  Amended SLA at §22.6(h); *Heckman*, 120 F.4th at 689-690.

The Ninth Circuit also noted with disapproval that New Era's mass arbitration rules, like FedArb's Framework, are "internally inconsistent, poorly drafted, and riddled with typos," and "differ significantly from the rules of traditional arbitration fora such as [JAMS] or the American Arbitration Association."  *Id.* at 677-78.

However, unlike FedArb's, at least all of New Era's rules existed. Section 1(g) of the Framework on FedArb's website states that the parties will use "FedArb's Expedited Arbitration rules" for individual arbitrations following decisions on common issues by its three-arbitrator tribunal. Framework §1(g). The words "Expedited Arbitration" are a hyperlink leading not to a set of expedited rules, but to a model expedited arbitration *agreement* which purports to "modify" "Fedarb's [traditional] Rules for Arbitration and Mediation" – a *third* set of rules. Waisnor Decl. ¶45 and Ex. Y. Among other things, the model Expedited agreement includes provisions under which either party can *unilaterally* demand mediation "at any time," "[a]ny party to a dispute may commence arbitration after attempting for at least 30 days to settle the dispute through informal discussion," and "[a]ll disputes shall be resolved in accordance with the law of the State of [California]." *Id*. (brackets in original). These provisions all directly contradict the Amended SLA, including the pre-filing notice and negotiation provisions Epson seeks to enforce here, and the Expedited "rules" do not specify which provisions should govern—those in FedArb's model agreement or those in Epson's Amended SLA which incorporates them by reference.

Even if the Expedited Arbitration rules did exist, the Framework does not clearly explain when they would apply. Section 1(g) purports to govern "Individual Arbitrations" occurring after tribunal decisions, and states that the Expedited Rules apply to *all* such individual arbitrations without exception. Framework, §1(g). Section 2 of the Framework purports to govern "[i]ndividuals wishing to submit a non-mass claim," with no clear explanation of how, if at all, such claims differ from the "individual arbitrations" governed by Section 1(g). *Id.* It states that the Expedited Rules, the standard "Arbitration Rules," the "Mass Arbitration [sic] Framework," or the "rules of another arbitral institution" might apply to "a non-mass claim," depending on circumstances. *Id.* Section 2(a) returns to the "individual arbitrations" phrase used

in Section 1.g, but states that the Expedited Rules will apply to them "unless compelling facts and circumstances dictate otherwise, or unless the claim is for an amount in excess of $100,000," in which event Section 2(a) *is totally silent about what rules will apply*. *Id.* Such head-spinning provides Petitioners with no notice of what they have agreed to, much less of whether and how to proceed to arbitration.

Further*,* consumers receive different versions of the Framework, each claiming to be current, from different parts of FedArb's website.  As discussed above, includes the above-referenced hyperlinks to the Expedited Arbitration "rules."  That web version includes a prominent link reading "Download this as a PDF."  But the linked PDF differs from web version.  Waisnor Decl. Ex. Z ("PDF Framework").  This is the version attached to Epson's declaration in support of its cross-motion.

Everywhere the web Framework references the "Expedited Arbitration rules," the PDF Framework instead references "FedArb's FastTrack expedited arbitration rules."  PDF Framework at §§1(g), 2, 2(b).  The referenced "FastTrack Arbitration rules" are not linked to in the PDF Framework, and no rules bearing the name "FastTrack" exist anywhere else on FedArb's website.  Thus, a claimant viewing the PDF Framework – the version provided to the court by Epson's counsel – would not only have a document differing from the web version, he or she would be unable to find the applicable rules (a problem amplified by the fact that the Expedited "rules" are not rules at all but a model arbitration clause).

At least as recently as September 2024, both the web version *and* the PDF version of the Framework referenced the nonexistent "FastTrack" rules, with no hyperlink.  After a state court granted a preliminary injunction enjoining proceedings before FedArb in favor of JAMS, FedArb updated the web version of the Framework, but not the PDF version.  *See generally Batchuluun v. Blizzard Ent. Inc.,* Orange County, Ca. Super. Ct. No. 30-2021-01421288-PO-CJC.  This change is not mentioned

anywhere on FedArb's website, and the prior version of the web Terms is not present, despite other legacy versions being available.  The District Court in *Heckman* observed that this types of abrupt, unclear rule changes in response to ongoing litigation evinces extreme procedural unconscionability. *Heckman v. Live Nation Entm't, Inc.*, 686 F. Supp. 3d 939, 956 (C. D. Cal. 2023) (noting with disapproval "New Era's repeated attempts to clarify and amend [its] Rules in response to this litigation").

Finally, the Framework's amendment provision is so "convoluted and internally contradictory [as] to be borderline unintelligible." *Heckman*, 120 F.4th at 683.  Section 1(j) reads: "FedArb reserves the right in its sole discretion to change the elements of this framework or any FedArb fees at any time.  These modifications and FedArb fees shall govern any arbitration prior to any claimant submitting a valid claim form." Framework, §1(j).  As written, this is nonsensical.  But even rewritten into the closest comprehensible version, i.e., that amendments shall be immediately applicable to any arbitration where a claim form has not yet been submitted, the rule is still unconscionable.  Submission of a claim form is the *final* step for a claimant, occurring up to 90 days after the tribunal decides *all* issues presented to it.  *See id,* §1(f).  In other words, FedArb may unilaterally change the rules applicable to pending claims – including increasing the arbitration fees or creating new barriers to claims – at any point up to 90 days *after* the Tribunal has decided on "any dispositive motions," "all discovery disputes," "all common issues of fact or law," and "any common damages issues."  *Id.* §1(e).

As the Ninth Circuit held, labeling something "arbitration" does not make it arbitration.  The FedArb clause is highly substantively unconscionable and Epson's purported amendment process was extremely procedurally unconscionable.  The Amended SLA's mass arbitration provisions are unenforceable.

### 3.    Alternatively, FedArb's ADR-MDL Process Is Unenforceable Under California's *Discover Bank* Rule.

FedArb's ADR-MDL framework is effectively reverse class arbitration with procedures tailored for the maximum benefit of Fed-Arb's "subscription" clients. "[C]lass arbitration was not ... envisioned by Congress when it passed the FAA in 1925." *Heckman* 120 F.4th at 689 (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 349 (2011)).  Indeed, "[t]he Supreme Court has consistently disparaged the use of aggregation in arbitration." *Id.* at 690 (citing *Lamps Plus, Inc. v. Varela*, 587 U.S. 176, 184 (2019)).  Moreover, federal courts lack authority to compel arbitration under agreements that fall outside of the FAA, regardless of how clear their agreements to arbitrate are: "a court's authority under the [FAA] to compel arbitration . . . doesn't extend to *all* private contracts, no matter how emphatically they may express a preference for arbitration.  Instead, antecedent statutory provisions limit the scope of the court's powers under §§3 and 4." *New Prime Inc. v. Oliveira*, 586 U.S. 105, 110 (2019) .

"Mass arbitration" protocols like FedArb's Framework that provide for aggregate resolution of "common issues" of fact and law in a manner that is extraordinarily harsh and one-sided, *Heckman*, 120 F.4th at 678, are "unworthy even of the name of arbitration." *Id.* at 690 (quoting *Hooters of Am., Inc. v. Phillips*, 173 F.3d 933, 940 (4th Cir. 1999)).  Therefore, they are unenforceable under California's longstanding *Discover Bank* rule, which prohibits arbitration agreements that effectively act as class action waiver in consumer contracts of adhesion.  *Id. see Discover Bank v. Superior Court*, 113 P.3d 1100, 1100 (Cal. 2005).  *Discover Bank* independently prohibits this Court from compelling arbitration to FedArb.

### 4. Should The Amended SLA Apply, The Offending Provisions Should Be Severed And Petitioners' Claims Sent To JAMS

The Amended SLA's arbitration provision contains a robust severance clause, which states that if any provision other than the class action waiver is found

unenforceable, "that provision shall be severed with the remainder of this Agreement remaining in full force and effect." *Id.* §22.9.   In such circumstances, "the unconscionable portion" – here, Section 22.6 – represents only a part of the agreement and can be severed without disturbing the primary intent of the parties to arbitrate their disputes." *Turng v. Guaranteed Rate, Inc.*, 371 F. Supp. 3d 610, 632 (N.D. Cal. 2019) (severing unconscionable provisions from arbitration clause and otherwise granting motion to compel arbitration).   With Section 22.6 severed, the individual arbitration provisions are materially identical to the SLA and require the parties to individually arbitrate their claims before JAMS. *Compare* SLA ¶14 with Amended SLA §22.6(g).

## CONCLUSION

Epson's cross-motion should be denied in its entirety, because Epson has not shown and cannot show that any Petitioner agreed to the Amended SLA, and the Amended SLA's delegation to FedArb is unconscionable and severable.

Dated: December 9, 2024          Respectfully submitted,

*s/Jonathan Waisnor*
Jonathan Waisnor (CA 345801)
Jonathan Gardner (*Pro Hac Vice*)
Alexander Schlow (*Pro Hac Vice*)
Morris Dweck (*Pro Hac Vice*)
jwaisnor@labaton.com
jgardner@labaton.com
aschlow@labaton.com
mdweck@labaton.com
**LABATON KELLER SUCHAROW LLP**
140 Broadway, 34th Floor
New York, NY 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477

**CERTIFICATE OF COMPLIANCE PURSUANT TO LOCAL RULE 11-62**

The undersigned, counsel of record for Petitioners, certifies that this brief contains 6950 words, in compliance with the word limit of Local Rule 11-6.1.

DATED: December 9, 2024               **LABATON KELLER SUCHAROW LLP**

                                       */s/ Jonathan Waisnor*
                                       Jonathan Waisnor (Bar No. 345801)
                                       140 Broadway
                                       New York, New York 10005
                                       Tel.: (212) 907-0700
                                       Fax: (212) 907-7039
                                       jwaisnor@labaton.com