**LABATON KELLER SUCHAROW LLP**
Jonathan Waisnor (CA 345801)
jwaisnor@labaton.com
Alexander Schlow (Pro Hac Vice)
aschlow@labaton.com
Morris Dweck (Pro Hac Vice)
mdweck@labaton.com
140 Broadway, Floor 34
New York, NY 10005
Telephone: 212-907-0700
Facsimile: 212-818-0477

**UMBERG ZIPSER LLP**
Carole E. Reagan (Bar No. 162674)
creagan@umbergzipser.com
1920 Main Street, Suite 750
Irvine, CA 92614
Telephone: 949-679-0052
Facsimile: 949-679-0461

Counsel for Petitioners

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| NICOLE AARON, et al., | **CASE NO. 8:24-CV-01712 FWS-DFMx** |
| Petitioners, | **REPLY IN SUPPORT OF VERIFIED CONSOLIDATED PETITION TO COMPEL ARBITRATION AND FOR SANCTIONS** |
| v. | |
| EPSON AMERICA, INC., | |
| Respondent. | Judge: Hon. Fred W. Slaughter<br>Date: February 27, 2025<br>Time: 10:00 a.m.<br>Courtroom: 10D |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................. iii

PRELIMINARY STATEMENT ......................................................... 1

    A.    The State Court Confirms the SLA is the Controlling Agreement and Orders Epson to Arbitrate With Every Petitioner Who Provided A Model or Serial Number. ......................................... 3

    B.    In This Proceeding, Epson Submits a Declaration by Megha Shukla that is Inaccurate When Compared Against Its Own Records ........................................................................ 4

ARGUMENT ..................................................................................... 5

I.    Petitioners' Motion to Compel Arbitration Should Be Granted. ...................... 5

    A.    Epson Has Not Rebutted the Evidence Produced by at least 2,239 Petitioners Showing That They Entered Into the SLA. ..................... 5

    B.    The SLA's Arbitration Clause Survives Termination of the Agreement. .................................................................. 7

II.    There Are No Threshold Issues That Would Warrant Delaying Arbitration, Permitting Epson Discovery, or Compelling Arbitration Under the Amended SLA. ...................................... 7

    A.    Epson Has No Evidence That Any Petitioner Affirmatively Assented to the Amended SLA. .......................................... 7

    B.    As a Matter of Law, No Petitioner Could Have Affirmatively Assented to the Amended SLA Prior to Epson Being on Notice of Their Claim. .................................................... 9

    C.    Epson's Condition Precedent Arguments Are Delegated to the Arbitrators .............................................................. 10

    D.    *Coinbase v. Suski* And The Purported Carveouts In The Amended SLA Do Not Create a Threshold Issue for the Court to Resolve ........... 11

    E.    Epson's Defamatory Attacks on Labaton Are Irrelevant ...................... 12

III.    There Is No Basis For Additional Discovery. ................................... 14

i

IV.     Epson Must Be Sanctioned.................................................................15

        A.     The CAA Applies to the Petition. ...........................................15

        B.     Section 1281.97 Furthers, Rather Than Frustrates, the FAA's
               Objectives...............................................................................16

        C.     None of Epson's Cited Authority Excuses Its Willful and
               Intentional Breach of the SLA ...............................................17

V.      A Stay of the Proceedings is Mandatory Under Section 3 of the FAA.............18

CONCLUSION.............................................................................18

1

# **TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Cases**

4

*5-Star Gen. Store, et al., v. Am. Express Co., et al.*,
    No. 24-cv-106-MSM-LDA (D.R.I. Dec. 2, 2024)..............................................12

*Abernathy v. Doordash*,
    438 F. Supp. 3d 1062 (N.D. Cal. Feb. 10, 2020)..............................6, 12, 13

*Adams v. Postmates, Inc.*,
    414 F. Supp. 3d 1246 (N.D. Cal. 2019) ..............................................10

*Am. Express Co. v. Italian Colors Rest.*,
    2012 WL 6759408 (U.S. Dec. 28, 2012) ..............................................13

*Barnes v. City of Centralia*,
    943 F.3d 826 (7th Cir. 2019) ..............................................8

*Beltran v. PeopleReady, Inc.*,
    2023 WL 3092973 (N.D. Cal. Apr. 25, 2023)..............................................14, 15

*BG Grp. PLC v. Republic of Arg.*,
    572 U.S. 25 (2014)..............................................10

*Brown v. Dillard's, Inc.*,
    430 F.3d 1004 (9th Cir. 2005) ..............................................16

*Caviani v. Mentor Graphics Corp.*,
    No. 19-cv-01645-EMC, 2019 U.S. Dist. LEXIS 160105 (N.D. Cal.
    Sept. 18, 2019)..............................................11

*Circuit City Stores, Inc. v. Najd*,
    294 F.3d 1104 (9th Cir. 2002) ..............................................9

*Coinbase v. Suski*,
    602 U.S. 143 (2024)..............................................1, 2, 11, 12

*Davis v. Shiekh Shoes, LLC*,
    300 Cal. Rptr. 3d 787 (Cal. Ct. App. 2022)..............................................17

iii

*Dekker v. Vivint Solar, Inc.*,
    479 F. Supp. 3d 834 (N.D. Cal. 2020), *rev'd on other grounds*, No.
    20-16584, 2021 WL 4958856 (9th Cir. Oct. 26, 2021) ...................................... 16

*Espinoza v. Super. Ct.*,
    299 Cal. Rptr. 3d 751 (Cal. Ct. App. 2022) ........................................................ 17

*Galgon v. Epson Am., Inc.*,
    No. 2:2021-cv-01794, 2021 WL 4513638 (C.D. Cal. June 16, 2021) ........... 5, 11

*Gallo v. Wood Ranch USA, Inc.*,
    297 Cal. Rptr. 3d 373 (Cal. Ct. App. 2022) ........................................................ 16

*Heckman v. Live Nation Ent., Inc.*,
    120 F.4th 670 (9th Cir. 2024) ........................................................................ 2, 13

*Heckman v. Live Nation Ent., Inc.*,
    686 F. Supp. 3d 939 (C.D. Cal. 2023), *aff'd*, 120 F.4th 670 (9th Cir.
    2024) ........................................................................................................................ 9

*Hernandez v. Sohnen Enters., Inc.*,
    321 Cal. Rptr. 3d 283 (Cal. Ct. App. 2024) ........................................................ 17

*Howsam v. Dean Witter Reynolds*,
    537 U.S. 79 (2002) ................................................................................................ 10

*Mondigo v. Epson Am., Inc.*,
    No. 20-cv-4400, 2020 WL 8839981 (C.D. Cal. Oct. 13, 2020) ..................... 5, 11

*O'Dell v. Aya Healthcare, Inc.*,
    No. 22cv1151-CAB-MMP, 2024 WL 4510583 (S.D. Cal. Oct. 15,
    2024) ...................................................................................................................... 17

*Olaka v. Citibank, N.A.*,
    No. 8:24-cv-00494-FWS-DFM, 2024 U.S. Dist. LEXIS 88721 (C.D.
    Cal. May 15, 2024) (Slaughter, J.) ......................................................... 8, 14, 15

*Oracle Am., Inc. v. Myriad Grp. A.G.*,
    724 F.3d 1069 (9th Cir. 2013) .............................................................................. 12

*Peleg v. Neiman Marcus Grp., Inc.*,
    140 Cal. Rptr. 3d 38 (Cal. Ct. App. 2012) ............................................................ 9

iv

*Pierre v. IEC Corp.*,
  2023 WL 3551962 (C.D. Cal. Mar. 14, 2023) ................................................... 15

*Postmates Inc. v. 10,356 Individuals*,
  2021 WL 540155 (C.D. Cal. Oct. 5, 2021) ...................................................... 16

*Russell v. Siemens Indus. Software Inc.*,
  No. 23-CV-03884-LJC, 2024 WL 4545970 (N.D. Cal. Oct. 21, 2024) ............. 17

*Sanfilippo v. Tinder, Inc.*,
  2018 WL 6681197 (C.D. Cal. Dec. 18, 2018), *aff'd sub nom.*
  *Sanfilippo v. Match Grp. LLC*, 2021 WL 4440337 (9th Cir. Sept. 28,
  2021) .......................................................................................................... 14

*See Nyerges v. Pac. Sunwear of Cal., LLC*,
  No.: SACV 21-01123-CJC(DFMx), 2022 WL 20717551(C.D. Cal.
  July 6, 2022) .............................................................................................. 15

*Smith v. Spizziri*,
  601 U.S. 472 (2024)..................................................................................... 18

*Steppechange LLC v. VEON Ltd.*,
  354 F. Supp. 3d 1033 (N.D. Cal 2018) .......................................................... 12

*Tinder v. Pinkerton Sec.*,
  305 F.3d 728 (7th Cir. 2002) ........................................................................... 8

*Uber Tech., Inc. v. Am. Arb. Ass'n., Inc.*,
  204 A.D.3d 506 (N.Y. App. Div. 2022) ........................................................ 12

*United States v. Hove*,
  52 F.3d 233 (9th Cir.1995) .............................................................................. 8

*Valencia v. Smyth*,
  110 Cal. Rptr. 3d 180 (Cal. Ct. App. 2010)................................................... 16

*Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*,
  489 U.S. 468 (1989)..................................................................................... 16

*Wagner v. Stratton Oakmont, Inc.*,
  83 F.3d 1046 (9th Cir. 1996) ....................................................................... 16

*Wallrich v. Samsung Elecs. Am., Inc.*,
    106 F.4th 609 (7th Cir. 2024) ........................................................................5

**Statutes**

Cal. Code Civ. Proc. §§ 1281.97 ................................................................15, 16, 17

vi

1

## **PRELIMINARY STATEMENT**

2
3
4
5
6
7
8

Epson's Response identifies no material dispute as to formation of the Software License Agreement ("SLA")[1] with respect to 3,084 Petitioners, and the SLA's arbitration clause specifically survives termination of the underlying agreement. Courts in this District have already held that the SLA delegates all disputes between Epson and its customers to JAMS. As a result, arbitration should be compelled to JAMS, Petitioners' motion for sanctions granted, and this action stayed pending the arbitrations.

9
10
11
12
13
14
15
16
17
18
19

Epson's "threshold issues" are a red herring centered on the existence of an agreement it admitted did not present to any customer prior to October 2022, after it received Petitioners' dispute notices in August and September 2022. Moreover, Epson has identified no material factual dispute as to any Petitioner. It does not even keep records of which Petitioners agreed to the Amended SLA,[2] so it has no basis to believe the Amended SLA applies to anyone. Regardless, because the SLA has survival and delegation clauses, it does not matter whether any Petitioner agreed to the Amended SLA. Epson cannot retroactively enforce a new arbitration agreement against claims for which it is already on notice. The FAA entitles Petitioners to enforcement of their arbitration agreements with Epson by their terms, not the arbitration agreement Epson wishes it would have had at the time the disputes arose.

20
21
22
23
24

For 2,445 Petitioners, Epson has not raised any factual disputes as to whether they agreed to the Amended SLA. The fact that 639 Petitioners did not recall if they agreed to a firmware update containing the Amended SLA between September 2022 and the filing of the Petition is not an admission that they did. Epson has the burden to produce evidence that the Amended SLA applies. It has not done so.

25

26
27
28

---

[1] The SLA is attached to Petitioners' Amended Petition to Compel Arbitration (ECF No. 28, "Petition") as Exhibit B.

[2] The Amended SLA is Exhibit F to the Declaration of Megha Shukla filed in support of Epson's cross-motion (ECF No. 34-16, "Shukla Dec.").

Further, the Supreme Court's decision in *Coinbase v. Suski*, 602 U.S. 143 (2024) does not create any threshold issues for this Court to resolve. In *Coinbase*, the Supreme Court held where there was no dispute that two agreements applied, one of which delegated arbitrability to the arbitrator and the other which did not, a court must resolve the issue of which agreement applies before compelling arbitration. Here, both agreements expressly delegate arbitrability issues to JAMS in the first instance. There are no conflicting arbitrability provisions for this Court to resolve.

Further, Epson's attempt to derail these proceedings with thousands of individual discovery disputes should be rejected. The discovery Epson seeks is not relevant because *even if every single Petitioner had agreed to the Amended SLA*, the result would still be arbitration before JAMS. As Petitioners show in their response to Epson's cross-motion, the FedArb "mass arbitration" procedures are identical to procedures the Ninth Circuit recently found unenforceable. Epson cannot force Petitioners to submit to a dispute resolution procedure it imposed on them during pending litigation that eliminates their due process rights, violates California law, and is "unworthy even of the name arbitration." *Heckman v. Live Nation Ent., Inc.*, 120 F.4th 670, 690 (9th Cir. 2024). And, since the mass arbitration provision is severable from the rest of the Amended SLA, and the Amended SLA still provides for individual arbitration before JAMS, all roads lead to the same place: JAMS.

Four tribunals have interpreted the SLA and held that Epson must arbitrate before JAMS. It is unclear why Epson believes the result will be different this time, its self-serving attacks on Petitioners' counsel notwithstanding. This Court should resolve the Petition and Petitioners' motions based on the existing record, grant Petitioners' motion for sanctions, and stay this consolidated action pending completion of the arbitrations.

### ADDITIONAL FACTUAL AND PROCEDURAL BACKGROUND

**A.    The State Court Confirms the SLA is the Controlling Agreement and Orders Epson to Arbitrate With Every Petitioner Who Provided A Model or Serial Number.**

On July 10, 2024, the state court issued an order in the bifurcated trial. Declaration of Jonathan D. Waisnor ("JW Decl.") ¶ 47, Ex. L.  As relevant here, the state court found that the SLA included a robust survival clause which provided: "**this Section 14 shall survive termination of this Agreement.**  This provision does not seek to preserve *a portion or portions* of Section 14; it states that "... *Section 14* shall survive termination of this Agreement"; meaning *all of Section 14 contractually survives and cannot be undone by a subsequent Agreement.*"  *Id*. at 26-27 (emphasis in original).  Furthermore, the state court held that since "[i]t is undisputed that [the SLA] predated [the Amended SLA, Section 14 of the SLA] survive[s] any claim by Epson that [the Amended SLA] is applicable to any Claimant that purchased [a printer] before the effective date of [the Amended SLA]. In other words, any party to the [SLA] is bound by the provisions of Section 14 of [the SLA], not the provisions of Section 22 of [the Amended SLA]."  *Id*. at 30-31.

After further briefing, on November 12, 2024, the state court issued its statement of decision in favor of Petitioners.  JW Decl. ¶ 29, Exh. P.  The state court found "in the absence of evidence of such download, [the Amended SLA] cannot be established as to any [Petitioner], <u>even if Section 14 of [the SLA] did not have the clause stating that said Section 14 survives the termination of [the SLA].</u>  As such, [the SLA] must apply; and Section 14, which by its own terms "shall survive the termination of this Agreement", must control."  *Id*. at 24 (emphasis in original).

Accordingly, the state court found that [the SLA] . . . is the controlling Agreement," and therefore "[p]ursuant to the requirements of [the SLA], . . . the Arbitrator shall determine whether or not the "Pre-Arbitration Steps and Notice" set forth in Section 14.3 of [the SLA] have been satisfied" and compelled Epson to

3

REPLY IN SUPPORT OF VERIFIED CONSOLIDATED PETITION
TO COMPEL ARBITRATION AND FOR SANCTIONS
CASE NO. 8:24-CV-01712 FWS-DFMX

arbitrate at JAMS with 683 Epson customers.  *Id*. at 33-34.  Epson did not hesitate to file voluminous objections to the tentative trial ruling.  Epson's Response to the Petition, ECF No. 33 ("Response") at 15 n.6.

Epson also baldly accuses Petitioners of forum-shopping because they were "dissatisfied with the proceedings" in the state court action.  Response at 13.  However, the 1,263 *Aaron* Petitioners were never parties to the state court proceedings.  JW Decl. ¶ n.1.  When Epson responded to the Petition by attempting to name them as defendants in the *Arnoff* complaint, Petitioners removed the declaratory judgment action to federal court rather than litigate in duplicative state court proceedings.  Removal applies to cases, not individual defendants, so this triggered removal of the entire *Arnoff* declaratory judgment action, not just the disputes involving the *Aaron* Petitioners.

**B.    In This Proceeding, Epson Submits a Declaration by Megha Shukla that is Inaccurate When Compared Against Its Own Records**

On November 18, 2024, Epson submitted the Declaration of Megha Shukla ("Shukla Declaration") in support of its cross-motion to compel arbitration to FedArb. JW Decl. ¶ 30.  This Court should evaluate the Shukla Declaration with skepticism based on its affiant's history of filing incomplete and incorrect statements under oath. For example, Ms. Shukla attached two spreadsheets showing serial numbers provided by *Arnoff* petitioners that supposedly do not match to a valid Epson serial number. Shukla Decl. ¶¶ 19-20.  However, over fifty (50) of these serial numbers were matched to *specific* Epson ink-cartridge printers that had been sold to customers using Epson's own warranty lookup website.  JW Decl. ¶ 32-34, Exh. Q.  Notably, Ms. Shukla made the same easily rebutted claims in her September 28, 2023 Declaration in the state court action.  *Id*. ¶ 37-42, Exhs. S-V.

The Shukla Declaration also mispresents the process of viewing and agreeing to the EULA in connection with a firmware update.  It claims that "[o]nce a user initiates the update, the user is automatically presented with the then-operative version of Epson's EULA, which they are encouraged to review carefully."  Shukla Decl. ¶ 14.

4

1    However, many Epson printers can be updated directly from the printer's control panel.

2    JW Decl. ¶¶ 35-36, Exh. R.  When a user updates their printer in this way, they are not

3    presented with the agreement.  *Id*.  Instead, they are given a URL, which would require

4    them to switch to a separate device, like a phone or computer, and manually enter the

5    URL provided on the printer's control panel to even view a copy of the contract.  *Id*.

6         The Shukla Declaration also confirms that Epson only rolled out the Amended

7    SLA in October 2022, *after* Petitioners noticed Epson of all of their claims, a fact

8    omitted from her state court declaration.  Exh. O.  It also confirms that Epson cannot

9    "track when or if individual users download any firmware update or agree to any

10   EULA. . . . Thus, Epson does not have records of the date on which any user initiated

11   such a firmware update and agreed to the now-current EULA."  Shukla Decl. ¶ 17.

12
                                **ARGUMENT**
13
14   **I.    PETITIONERS' MOTION TO COMPEL ARBITRATION SHOULD BE
            GRANTED.**

15        **A.    Epson Has Not Rebutted the Evidence Produced by at least 2,239
16              Petitioners Showing That They Entered Into the SLA.**

17        There are 3,084 Petitioners seeking arbitration against Epson.  Petitioners

18   established that they agreed to the SLA prior to October 2022, the earliest date when

19   any Epson customer could have encountered the Amended SLA.  Exhibits A, C1-C20

20   to Petitioners' Verified Amended Petition ("Amended Petition"), ECF No. 28;

21   Amended Petition Exh. M ¶ 1. ("*Arnoff* Compl.").  Petitioners provided specific facts

22   about the printers they purchased through either a sworn declaration or in response to

23   the state court's order that Petitioners provide their model and serial numbers in

24   spreadsheet format.  *Id*.  This is more than sufficient to demonstrate that the SLA

25   applies to Petitioners' claims,[3] and is far more evidence of an agreement to arbitrate

26   ─────────────────────
27   [3] As the Seventh Circuit recently noted, Petitioners' burden is extremely light.

28   "[C]onsumers could . . . submit[] almost anything to meet their burden of proving the

                                                              Footnote continued on next page

                                             5

1    than the courts in *Mondigo v. Epson Am., Inc.*, No. 20-cv-4400, 2020 WL 8839981

2    (C.D. Cal. Oct. 13, 2020), and *Galgon v. Epson Am., Inc.*, No. 2:2021-cv-01794, 2021

3    WL 4513638 (C.D. Cal. June 16, 2021) had before them.   Amended Petition ¶ 25;

4    *Abernathy v. Doordash,* 438 F. Supp. 3d 1062, 1065 (N.D. Cal. Feb. 10, 2020)

5    (compelling a company to arbitrate employee misclassification claims brought by

6    5,010 individual petitioners where those petitioners "signed declarations attesting to

7    'click[ing] through' DoorDash's AAA arbitration agreement.").

8         Indeed, Epson raises no challenges to the evidence submitted by 2,239

9    Petitioners.  JW Decl ¶ 43, Exh. W.  For 630 Petitioners, Epson relies on the absence

10   of certain information.[4]  While in some cases, absence of this evidence might suggest

11   a Petitioner was not an Epson customer, Epson has sued all of the Petitioners alleging

12   that they are Epson customers.  *Arnoff* Compl. ¶ 1.  Epson cannot point to the absence

13   of evidence that Petitioners are Epson customers while at the same time pursuing a

14   declaratory judgment action against them based on the allegation that "[Petitioners] are

15   purchasers of Epson printers."  *Id*.  For a subset of 217 Petitioners, Epson claims the

16   serial numbers submitted were inaccurate.  Shukla Decl. Exhs. H, I.  However, as set

17   forth in Section B., *infra,* Epson's analysis is inaccurate when compared to the same

18   Epson website it relies on in its Response.  JW Decl. ¶ 30-34, Exh. Q; Response,

19   Morgan Decl. ¶ 13.  Further, the 217 Petitioners have also submitted model numbers

20   that Epson does not challenge, and Epson has already agreed these Petitioners are

21   

22   existence of an arbitration agreement.  For example . . . receipts, order numbers, or

23   confirmation numbers from their purchases of [] devices.  Or . . . declarations attesting

24   to the allegations" of an agreement to arbitrate, exactly as Petitioners did here.  *Wallrich
     v. Samsung Elecs. Am., Inc.*, 106 F.4th 609, 619 (7th Cir. 2024).

25   [4] While Epson claims there are 412 *Arnoff* Petitioners' who failed to provide model

26   numbers (Morgan Decl. ¶9), and 655 *Arnoff* Petitioners' who failed to provide serial

27   numbers (*Id.*), there is almost complete overlap between the two groups.  An additional
     25 Petitioners of the 655 later submitted serial numbers, which Epson challenges as

28   invalid in Epson's Response, Exs. H and I, discussed *supra*.

Epson customers. *Arnoff* Compl. ¶ 1.

Finally, while Epson claims that thirty (30) Petitioners possess "EcoTank" printers allegedly unaffected by the deceptive and unlawful practices that are the subject of Petitioners' underlying demands, this is a merits issue. Epson does not dispute that owners of EcoTank printers agree to the same SLA as all other Epson customers. Shukla Decl. ¶ 12.

### B.  The SLA's Arbitration Clause Survives Termination of the Agreement.

As Epson acknowledges, once a Court determines that there is an enforceable arbitration agreement, arbitration must be compelled. Response at 14. As the state court found, the arbitration agreement in the SLA includes a robust survival clause which provided: "**this Section 14 shall survive termination of this Agreement.** This provision does not seek to preserve *a portion or portions* of Section 14; it states that "... ***Section 14*** shall survive termination of this Agreement"; meaning ***all of Section 14 contractually survives and cannot be undone by a subsequent Agreement.***" Exh. L at 26-27 (emphasis in original). The state court found "in the absence of evidence of such download, [the Amended SLA] cannot be established as to any [Petitioner], <u>**even if Section 14 of [the SLA] did not have the clause stating that said Section 14 survives the termination of [the SLA].**</u> As such, [the SLA] must apply; and Section 14, which by its own terms "shall survive the termination of this Agreement", must control." *Id.* at 24 (emphasis in original). There is simply no need to look at any agreement other than the SLA. Arbitration should be compelled.

## II.  THERE ARE NO THRESHOLD ISSUES THAT WOULD WARRANT DELAYING ARBITRATION, PERMITTING EPSON DISCOVERY, OR COMPELLING ARBITRATION UNDER THE AMENDED SLA.

### A.  Epson Has No Evidence That Any Petitioner Affirmatively Assented to the Amended SLA.

Epson next argues that the Court must resolve the issue of whether each Petitioner agreed to the Amended SLA before it can compel arbitration as to any

Petitioner.  However, Epson admits that no Epson customer would have encountered the Amended EULA until, at the earliest, October 2022.[5]  In other words, Epson does not meaningfully dispute that: (i) prior to late 2022, everyone who purchased and set up an Epson printer agreed to the SLA; (ii) it did not introduce the Amended SLA into its software updates until October 2022; (iii) acceptance of the Amended SLA as part of the update process is voluntary, requires affirmative assent, and does not occur automatically; and (iv) it has *no records whatsoever* that *any* Petitioner agreed to the Amended SLA.  Shukla Decl. ¶¶ 12-17.

It is black letter law that, "a party cannot avoid compelled arbitration by generally denying the facts upon which the right to arbitration rests."  *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002).  Nor is the existence of "some metaphysical doubt as to the material facts" enough.  *Barnes v. City of Centralia*, 943 F.3d 826, 832 (7th Cir. 2019) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).  Accordingly, Epson has not raised a material dispute that *any* Petitioner agreed to the Amended SLA prior to October 2022, when Epson was already on notice of the claims.  *See, e.g., Olaka v. Citibank, N.A.*, No. 8:24-cv-00494-FWS-DFM, 2024 U.S. Dist. LEXIS 88721 at *5 (C.D. Cal. May 15, 2024) (Slaughter, J.) (motion to compel arbitration properly denied where defendant "fails to provide sufficient evidence both that Plaintiff signed the [agreement to arbitrate] and that this iteration of the [agreement] was the same agreement provided to Plaintiff at the" relevant time) (citing *Knutson v. Sirius XM Radio, Inc.*, 771 F.3d 559, 565 (9th Cir. 2014)).

Epson tries to infer this evidence for some Petitioners through an unchecked box on 639 Petitioners' attestations regarding whether those Petitioners had updated their

---

[5] Epson falsely claims that "Epson finalized the current Epson EULA in April 2022; any user who received and downloaded a software or firmware update after that date would have accepted the terms of the [Amended EULA]," a statement that is directly contradicted by the Shukla Declaration.  Response at 17; Shukla Decl. ¶ 16.

printers after September 1, 2022, which it mischaracterizes as an admission that the "639 petitioners have accepted Epson's current EULA." Response at 17. However, Petitioners' attestations read: "I have not affirmatively assented to any updates to my Epson Printer Software License Agreement since September 1, 2022." Amended Petition, Ex. C1. That 639 Petitioners did not check the box next to this statement is not evidence of affirmative assent to any updates. Silence or inaction does not constitute admission or acceptance. *United States v. Hove*, 52 F.3d 233 (9th Cir.1995); *see also Circuit City Stores, Inc. v. Najd*, 294 F.3d 1104 (9th Cir. 2002). That these Petitioners may not recall with certainty whether they assented to an update or whether the update contained any changes to the SLA does not prove they affirmatively accepted the Amended SLA. *Id.*

Finally, Epson is also incorrect that for the 639 Petitioners, there is "no basis . . . to compel arbitration in JAMS . . ." if they agreed to the Amended SLA. Response at 17. The Amended SLA *presumptively provides* for individual arbitration before JAMS except in the case of a so-called "mass arbitration." Amended SLA § 22. As described further in Petitioners' response to Epson's cross-motion, the mass arbitration provision is unenforceable and severable from the rest of the arbitration agreement, so Petitioners can still pursue their claims in individual JAMS arbitration.

## B.    As a Matter of Law, No Petitioner Could Have Affirmatively Assented to the Amended SLA Prior to Epson Being on Notice of Their Claim.

Petitioners provided notice of their claims in letters sent on August 31, 2022 and September 22, 2022. Even if Petitioners had viewed and agreed to the Amended SLA after October 2022, California law prevents it from being applied retroactively. *See, e.g., Peleg v. Neiman Marcus Grp., Inc.*, 140 Cal. Rptr. 3d 38 (Cal. Ct. App. 2012) (under both the FAA and state law, an "arbitration agreement is unenforceable if a party could "amend the contract in anticipation of a specific claim, altering the arbitration process to [the other party's] detriment"); *Heckman v. Live Nation Ent., Inc.*, 686 F.

9

Supp. 3d 939, 953 (C.D. Cal. 2023), *aff'd*, 120 F.4th 670 (9th Cir. 2024) (noting the "extreme amount of procedural unconscionability" inherent in amending an arbitration provision "(1) to bring about a significant change in the parties' agreement (from individual, bilateral arbitration to mass arbitration); (2) unilaterally; (3) in the midst of ongoing litigation; (4) to be applied retroactively."). Any factual disputes about when after October 2022 any particular Petitioner may have encountered a firmware update are thus irrelevant as a matter of law.

### C.    Epson's Condition Precedent Arguments Are Delegated to the Arbitrators

Epson's argument that even if the SLA applies, the Court is still required to determine whether any individual Petitioner satisfied the requirements of Epson's notice provision contradicts settled Supreme Court cases. Response at 15-16. But the SLA's delegation of arbitrability to the arbitrator includes whether the parties have satisfied any conditions precedent, as the state court held. *See, e.g., Adams v. Postmates, Inc.*, 414 F. Supp. 3d 1246, 1254–55 (N.D. Cal. 2019) (delegation of arbitrability to arbitrator in a matter involving thousands of individual arbitrations includes issue of satisfaction of conditions precedent). Moreover, even in the absence of a comprehensive delegation clause like the SLA's, "conditions precedent to an obligation to arbitrate" are "presumptively for the arbitrator, not the judge." *Howsam v. Dean Witter Reynolds*, 537 U.S. 79, 84–85 (2002); *see also, e.g., BG Grp. PLC v. Republic of Arg.*, 572 U.S. 25, 34-35 (2014) (same).

To be clear, the record from the state court trial reflects that Petitioners did comply with the notice provision in the SLA. They provided all of the information required by the SLA's notice provision, sent a letter to Epson describing the claims, and negotiated in good faith for more than sixty (60) days. The record demonstrates that the parties negotiated and exchanged information *for nearly six months* trying to find a path to resolving the claims, each making some concessions, but remaining far apart. JW Decl. ¶ 4-17. Petitioners did not rush to file arbitrations; indeed, they pushed

for a mediation as an alternative to arbitration, executed a tolling agreement, and negotiated for far longer than they were required to under the notice provision before filing arbitrations, doing so only after mediation failed. *Id.* The parties' engaged in a full day mediation before Robert Meyer, Esq. of JAMS, an experienced mass arbitration mediator. Response at 9; JW Decl. ¶ 16. If Epson were correct that Petitioners' goal was to leverage arbitral fees for a quick settlement of meritless claims (Response at 1), there would be no reason for Petitioners to take any of these actions— they simply would have filed their arbitration demands on October 30, 2022, as soon as the 60 day contractual period ended. *See* JW Decl. ¶¶ 18-20.

**D.    *Coinbase v. Suski* And The Purported Carveouts In The Amended SLA Do Not Create a Threshold Issue for the Court to Resolve**

Epson also contends, citing *Coinbase v. Suski*, 602 U.S. 143 (2024), that "this Court—not JAMS—must first determine which EULA applies to each petitioners' claims." Response at 14. Epson is incorrect. *Coinbase* applies only where it is undisputed, or has been proven, that "parties have multiple agreements that . . . conflict as to the . . . question of who decides arbitrability." 602 U.S. at 149; *id.* at 146-47 (noting the undisputed record that the parties had "agreed to a second contract"). As set forth in Section II.A., *infra*, Epson has presented *no* evidence that any Petitioner ever agreed to the Amended SLA, making *Suski* inapplicable. And as set forth in Section II.C., *infra*, both the SLA and the Amended SLA expressly delegate *all* questions of arbitrability to a JAMS arbitrator, as the *Mondigo* and *Galgon* courts both held. *Mondigo v. Epson Am., Inc.,* No.: CV 20-4400-CBM-GJS(x), 2020 WL 8839981, at *3 (C.D. Cal. Oct. 13, 2020) (quoting *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1209 (9th Cir. 2016)); *Galgon v. Epson Am., Inc.,* No.: CV 21-1794-CBM-(MRWx), 2021 WL 4513638, at *4 (C.D. Cal. June 16, 2021). This conclusion is further supported by the incorporation by reference of the JAMS rules in both agreements. SLA §14.6; Amended SLA § 22.6(g). "[I]n this circuit, incorporation of, *e.g.*, JAMS rules by reference is generally

1   sufficient to" establish that "there is a clear and unmistakable agreement to delegate
2   the question of arbitrability to the arbitrator." *Caviani v. Mentor Graphics Corp.*, No.
3   19-cv-01645-EMC, 2019 U.S. Dist. LEXIS 160105, at *12-13 (N.D. Cal. Sept. 18,
4   2019) (collecting cases).

5          Epson's argument that the delegation carveouts in the Amended SLA require
6   this Court to first determine which agreement applies "conflates the *scope* of the
7   arbitration clause, i.e., which claims fall within the carve-out provision, with the
8   question of *who* decides arbitrability." *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d
9   1069, 1076 (9th Cir. 2013) (emphasis in original); *Steppechange LLC v. VEON Ltd.*,
10  354 F. Supp. 3d 1033, 1044 (N.D. Cal 2018) (noting that this rule is the same even
11  where a carveout seemingly applies) (collecting cases).  Under the delegation clause in
12  both agreements here, the scope of carveouts is for the arbitrator.  *Coinbase* is not
13  relevant.

14         **E.     Epson's Defamatory Attacks on Labaton Are Irrelevant**

15         Epson spends much of its submission reciting generic complaints about "mass
16  arbitration" that have been routinely rejected by courts and are irrelevant to whether
17  the specific Petitioners here have demonstrated they are parties to the SLA.  Epson's
18  complaints about mass arbitration generally, Petitioners' counsel specifically, or other
19  clients represented by Petitioners' counsel who are not party to these proceedings are
20  not relevant to Petitioners' motion.  Response at 2; Morgan Decl., ¶¶ 3-4.  On the
21  contrary, courts have noted the hypocrisy of companies attempting to avoid arbitration
22  as required by the agreements they drafted, as Epson is attempting here.  *See, e.g.*,
23  *Abernathy*, 438 F. Supp. 3d at 1068 (company's refusal to arbitrate with 5,879
24  employees was "hypocrisy" and "irony upon irony"); *Uber Tech., Inc. v. Am. Arb.*
25  *Ass'n., Inc.*, 204 A.D.3d 506, 510 (N.Y. App. Div. 2022) (New York appellate court
26  rejected Uber's attempt to "avoid paying the arbitration fees associated with 31,000
27  nearly identical cases," because the "fees are directly attributable to [a] [business]

28

decision" to preclude class or collective action).  Courts recognize that while Epson "clearly is not 'ready' and 'willing' to arbitrate on anyone's terms but its own, [] that is not how the arbitration system works."  *5-Star Gen. Store, et al., v. Am. Express Co.*, *et al.*, No. 24-cv-106-MSM-LDA (D.R.I. Dec. 2, 2024), ECF No. 34 (denying corporate defendant's motion to compel arbitration after it defaulted on $17 million in arbitration fees in connection with over 5,000 individual arbitrations).  Epson's reliance on these arguments is especially ironic because its own counsel, Quinn Emanuel Urquhart & Sullivan LLP, routinely appears on behalf of consumers or employees in mass arbitration cases.  *See generally Heckman v. Live Nation Ent., Inc.*, 120 F.4th 670, 675 (9th Cir. 2024); *Abernathy*, 438 F. Supp. 3d 1062 (describing mass arbitration on behalf of 5,879 employee drivers brought by Quinn Emanuel Urquhart & Sullivan, LLP and Keller Lenkner LLC).

Lacking authority, Epson falls back on a U.S. Chamber of Commerce Institute for Legal Reform article by corporate defense attorneys purporting to act on behalf of a non-profit.  Response Exh. 3.  The article mischaracterizes mass arbitration generally, Petitioners' counsel's conduct in other cases specifically, and contradicts the authors' own position in *Italian Colors* that mass arbitration is an appropriate alternative to class actions because the "[i]nternet and social media can be used effectively to reach out to potential claimants ... [and to] identify other businesses or individuals with similar claims."  *See* Brief of the Chamber of Commerce of the United States of America and Business Roundtable as Amici Curiae in Support of Petitioners, *Am. Express Co. v. Italian Colors Rest.*, 2012 WL 6759408, at *30 (U.S. Dec. 28, 2012) (discussing mass arbitration against AT&T).  The rest of the Chamber article repeatedly relies on unattributed statements from mass arbitration defense counsel, and qualifies its allegations with phrases such as: "it is hard to imagine," "may very well constitute," "may run afoul," and "[i]t is unclear."[6]  These qualifications are because the Chamber

---

[6] Response, Ex. 3 at 30-32, 34.

does not cite to any disciplinary actions taken against any lawyer representing clients in mass arbitrations. Response Ex. 3.

And while Epson repeatedly accuses Petitioners' counsel of "forum-shopping," "extortion," and threatening Epson with "with tens of millions of dollars . . . to leverage a settlement," it was Petitioners that proposed that the parties agree to resolve "the current pre-arbitration disputes before a JAMS Process Administrator, adhering to the JAMS Mass Arbitration Procedures and Guidelines" first introduced on May 1, 2024.[7] Response at 1-2; JW Decl., ¶ 15, Ex. J. The JAMS Mass Arbitration Procedures and Guidelines are an optional framework that permits the resolution of certain arbitrability disputes by a "process arbitrator," with the business paying a single flat fee of roughly $5,000 regardless of the number of consumers who file arbitrations. JW Decl. ¶ 20, Ex. AA. This would have mooted the state court litigation and avoided the filing of this Petition. Epson declined Petitioners' offer. JW Decl. ¶ 21, Ex. K.

Bluster aside, Epson can only point to only two individual Petitioners out of over 3,086—or 0.0648% of Petitioners—as even suggestive of some broader deficiency with Petitioners' litigation strategy. Response at 12. Those Petitioners are no longer seeking arbitration. However, despite its allegations of "fraudulent" activity by these Petitioners, Epson alleged in its declaratory judgment action that these Petitioners, Maurice Andrews and Richard Polich, agreed to the Amended SLA, and they are included in Epson's pending cross-motion to compel arbitration, which presumes the existence of an arbitration agreement. *Arnoff* Compl. ¶ 1.

## III.    THERE IS NO BASIS FOR ADDITIONAL DISCOVERY.

Epson requests burdensome, individualized discovery into each Petitioner's individual interactions with their Epson printer. Response at 17-19. But under the FAA, this discovery is only necessary "if 'a district court concludes that there are genuine disputes of material fact as to whether the parties formed an arbitration

---

[7] Claimants first made a similar offer on March 22, 2023. See Exhibit W.

14

1  agreement.'"  *Olaka*, 2024 U.S. Dist. LEXIS 88721, at *3 (quoting *Hansen v. LMB*

2  *Mortg. Servs., Inc.*, 1 F.4th 667, 672 (9th Cir. 2021)).  Here, there is no genuine dispute

3  of material fact as to whether Epson and Petitioners formed an arbitration agreement—

4  the SLA—under which this Court must compel arbitration.  *Sanfilippo v. Tinder, Inc.*,

5  2018 WL 6681197, at *2 (C.D. Cal. Dec. 18, 2018), *aff'd sub nom. Sanfilippo v. Match*

6  *Grp. LLC*, 2021 WL 4440337 (9th Cir. Sept. 28, 2021).

7        Epson cites only cases where discovery was *necessary* to resolve formation

8  disputes.  Response at 17-18.  In *Beltran v. PeopleReady, Inc.*, 2023 WL 3092973 (N.D.

9  Cal. Apr. 25, 2023), the Court was presented with a "contract [that] appears to show

10  [Plaintiff's] electronic signature,"—the *prima facie* showing Epson has *not* made

11  here—and discovery was ordered only because Plaintiff denied being "given the

12  opportunity to see or review the document," creating a genuine issue as to formation.

13  *Id.* at *6.  Similarly, in *Pierre v. IEC Corp.*, 2023 WL 3551962 (C.D. Cal. Mar. 14,

14  2023), the defendant made a *prima facie* showing of assent to an agreement through

15  detailed, individualized records (the kind Epson admits it doesn't have) that someone

16  using the plaintiff's name signed an arbitration agreement with it.  *Id.* at *4.  Discovery

17  was ordered because the plaintiff made a credible showing that someone else used her

18  name to sign the defendant's agreement, creating a genuine issue of fact.  *Id.* at *4-5.

19  Thus, both cases involved both *prima facie* evidence that specific individuals had

20  signed particular agreements, and genuine disputes as to the validity of those

21  signatures.  Here, by contrast, it is undisputed that each Petitioner has agreed to the

22  SLA, and Epson "fails to provide" *any* evidence, much less "sufficient evidence . . .

23  that [Petitioners] signed the" Amended SLA.  *Olaka,* 2024 U.S. Dist. LEXIS 88721 at

24  *5.

25  **IV.   EPSON MUST BE SANCTIONED.**

26        **A.   The CAA Applies to the Petition.**

27        Epson does not deny it breached Cal. Code Civ. Proc. §§ 1281.97. *et seq.*, by

28

failing to pay arbitration fees invoiced by JAMS in May 2023, or that sanctions, including attorneys' fees, are mandatory for a breach of the statute.  Amended Petition ¶ 33; Ex. N-P.  Instead, Epson recycles preemption arguments that are routinely rejected by California courts.  First, Epson argues the CAA does not apply to arbitration agreements governed by the FAA.  Epson's Response at 20.  However, the 1,170 California Petitioners receive the protection of their home-state laws, including the CAA, regardless of any contractual provision invoking the FAA.  *See Nyerges v. Pac. Sunwear of Cal., LLC*, No.: SACV 21-01123-CJC(DFMx), 2022 WL 20717551, at *3 (C.D. Cal. July 6, 2022) (holding that the CAA applies "in any arbitration involving California employees or consumers" and finding that "the California legislature meant to offer a mechanism for ensuring the efficiency of any arbitration, not just those being compelled pursuant to the CAA"); *see also Postmates Inc. v. 10,356 Individuals*, 2021 WL 540155, at *1 (C.D. Cal. Oct. 5, 2021).

Further, the SLA  is "governed by state law principles."  *Valencia v. Smyth*, 110 Cal. Rptr. 3d 180, 199 (Cal. Ct. App. 2010); *see also Wagner v. Stratton Oakmont, Inc.*, 83 F.3d 1046, 1049 (9th Cir. 1996) (same).  That includes the question of breach and its consequences.  *Brown v. Dillard's, Inc.*, 430 F.3d 1004, 1010 (9th Cir. 2005) (applying "general principles of California contract law" to determine the consequences of the drafting party's "breach of its obligations under the arbitration agreement").  The CAA's provisions apply here because they define when a drafting party has breached its payment obligations in a contract to arbitrate.  *Dekker v. Vivint Solar, Inc.*, 479 F. Supp. 3d 834, 837 (N.D. Cal. 2020), *rev'd on other grounds*, No. 20-16584, 2021 WL 4958856 (9th Cir. Oct. 26, 2021) ("Here, § 1281.97 *is* outcome determinative (on the breach issue) . . . .").

## B.    Section 1281.97 Furthers, Rather Than Frustrates, the FAA's Objectives.

Second, Epson contends the FAA preempts application of Section 1281.97. Epson's Response at 21.  However, the FAA preemption does not sweep this broadly.

16

In *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468 (1989), the Supreme Court clarified held the FAA did not preempt California's statute providing for a stay of arbitration pending the conclusion of related litigation between one of the parties to the agreement and a third-party because the FAA "contains no express pre-emptive provision, nor does it reflect a congressional intent to occupy the entire field of arbitration." *Id.* at 477. The Court clarified that the CAA would only be preempted if it directly conflicted with federal law or hindered Congress's objectives.

Applying *Volt*, courts have held that Section 1281.97 is consistent with the FAA because it "further[s]—rather than frustrate[s]—the objectives of the FAA to honor the parties' intent to arbitrate and to preserve arbitration as a speedy and effective alternative forum for resolving disputes." *Gallo v. Wood Ranch USA, Inc.*, 297 Cal. Rptr. 3d 373, 378-79, 387 (Cal. Ct. App. 2022); *Espinoza v. Super. Ct.,* 299 Cal. Rptr. 3d 751. 764-66 (Cal. Ct. App. 2022); *O'Dell v. Aya Healthcare, Inc.*, No.: 22cv1151-CAB-MMP, 2024 WL 4510583, at *3 (S.D. Cal. Oct. 15, 2024).

## C.    None of Epson's Cited Authority Excuses Its Willful and Intentional Breach of the SLA

Unable to cite a single case in this District that has found Section 1281.97 preempted or inapplicable, Epson cites cases that do not even involve the statute. Epson Response at 20 (citing *Victrola 89, LLC v. Jaman Props. 8 LLC*, 260 Cal. Rptr. 3d 1, 4 (Cal. Ct. App. 2020) (analyzing a different part of the CAA, Section 1298.7); *Davis v. Shiekh Shoes, LLC*, 300 Cal. Rptr. 3d 787 (Cal. Ct. App. 2022) (addressing an employer's common law waiver of the right to arbitrate).

Epson also cites *Hernandez v. Sohnen Enters., Inc.*, 321 Cal. Rptr. 3d 283 (Cal. Ct. App. 2024) and *Russell v. Siemens Indus. Software Inc.*, No. 23-CV-03884-LJC, 2024 WL 4545970 (N.D. Cal. Oct. 21, 2024). Epson Response at 20-21. However, those cases involved the defendant's immaterial or curable failures to timely pay arbitration fees within the 30-day limit, which the plaintiff attempted to use to withdraw from arbitration. In *Hernandez*, the court refused to find waiver where the defendant

17

missed the payment deadline by a week because "the FAA preempts *the portion* of section 1281.97 that requires findings of material breach and *a waiver of the right to arbitrate as a matter of contract law*." *Hernandez*, 321 Cal. Rptr. 3d at 300 (emphasis added). Likewise, in *Russell*, the defendant missed the payment deadline by five days and promptly cured the deficiency once notified. *Russell*, 2024 WL 4545970, at *9. Here, Epson has made clear it will not arbitrate before JAMS without a court order, and Petitioners seek to compel arbitration, not to be excused from it. Amended Petition ¶ 33; Ex. O.

## V.    A STAY OF THE PROCEEDINGS IS MANDATORY UNDER SECTION 3 OF THE FAA

Epson contends that Petitioners' request for a stay should be denied while this Court orders further discovery before compelling arbitration. Epson Response at 19-20. For the reasons set forth above, the Petition and Motion should be granted. The FAA prohibits Epson from continuing to burden Petitioners and this Court with its "declaratory judgment" action while the arbitrations are ongoing. 9 U.S.C. § 3; *Smith v. Spizziri*, 601 U.S. 472, 476 (2024).

## CONCLUSION

The Court should grant the Petition and Motion, compel arbitration before JAMS, deny Epson's cross-motion, request for discovery, and request for trial, and grant Petitioners' motion for sanctions and for a stay.

December 10, 2024                    Respectfully submitted,


s/Jonathan Waisnor
Jonathan Waisnor (CA 345801)
Jonathan Gardner (*Pro Hac Vice*)
Alexander Schlow (*Pro Hac Vice*)
Morris Dweck (*Pro Hac Vice*)
jwaisnor@labaton.com

18

Case 8:24-cv-01712-FWS-DFM    Document 39    Filed 12/09/24    Page 26 of 27    Page ID #:16805

jgardner@labaton.com
aschlow@labaton.com
ndweck@labaton.com
**LABATON KELLER SUCHAROW LLP**
140 Broadway, 34th Floor
New York, NY 10005
Telephone: (212) 907-0700
Facsimile: (212) 907-7039

REPLY IN SUPPORT OF VERIFIED CONSOLIDATED PETITION
TO COMPEL ARBITRATION AND FOR SANCTIONS
CASE NO. 8:24-CV-01712 FWS-DFMX

**CERTIFICATE OF COMPLIANCE PURSUANT TO LOCAL RULE 11-62**

The undersigned, counsel of record for Petitioners, certifies that this brief contains 6,291 words, in compliance with the word limit of Local Rule 11-6.1.

DATED: December 9, 2024                    **LABATON KELLER SUCHAROW LLP**

                                           */s/ Jonathan Waisnor*
                                           Jonathan Waisnor (Bar No. 345801)
                                           140 Broadway
                                           New York, New York 10005
                                           Tel.: (212) 907-0700
                                           Fax: (212) 907-7039
                                           jwaisnor@labaton.com