QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Shon Morgan (Bar No. 187736)
  shonmorgan@quinnemanuel.com
  John W. Baumann (Bar No. 288881)
  jackbaumann@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone:  (213) 443-3000
Facsimile:   (213) 443-3100

Attorneys for Epson America, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| NICOLE AARON, *et al.*,<br><br>Petitioners,<br><br>vs.<br><br>EPSON AMERICA, INC.,<br><br>Respondent. | CASE NO. 8:24-cv-01712-FWS-DFM<br><br>**EPSON AMERICA, INC.'S REPLY IN SUPPORT OF ITS CROSS-MOTION FOR LIMITED DISCOVERY AND TO COMPEL ARBITRATION IN FEDARB**<br><br>Date:  February 27, 2025<br>Time:   10:00 a.m.<br>Crtrm.:  10D<br><br>The Hon. Fred W. Slaughter<br><br>Trial Date:       None Set |
| EPSON AMERICA, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>GRAESEN ARNOFF, *et al.*,<br><br>Defendants. | |

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................. 1

ARGUMENT ............................................................................................ 3

I.    PETITIONERS SEEK TO AVOID THEIR AGREEMENT TO THE
      CURRENT EULA BY DISREGARDING MATERIAL FACTS AND
      WELL-ESTABLISHED LAW ......................................................... 3

II.   THERE IS AMPLE EVIDENCE HUNDREDS OF PETITIONERS
      AGREED TO EPSON'S CURRENT EULA ..................................... 4

III.  *COINBASE* SQUARELY APPLIES TO THIS DISPUTE .............. 7

IV.   THE COURT CAN DECIDE WHETHER PETITIONERS MET THE
      EULAS' IDENTICAL PRE-FILING REQUIREMENTS ................. 8

V.    PETITIONERS DO NOT IDENTIFY ANY BASIS TO DENY
      DISCOVERY .................................................................................. 9

VI.   DELEGATION TO FEDARB PURSUANT TO EPSON'S CURRENT
      EULA IS NOT UNCONSCIONABLE ............................................ 10

      A.    FedArb's Mass Arbitration Framework Is Not So Unfair to One
            Side as to Be Substantively Unconscionable ......................... 11

      B.    No Aspect of the Current EULA Is Procedurally Unconscionable ...... 13

      C.    Petitioners' *Discover Bank* Argument Is Misdirected and
            Irrelevant ............................................................................... 17

      D.    Petitioners' Circular Severance Argument Should Be Rejected .......... 19

CONCLUSION........................................................................................ 19

1

# <u>TABLE OF AUTHORITIES</u>

2

<u>Page</u>

3

<u>Cases</u>

4

*22QCentral v. Pharm E., Inc.*,
  No. CV-11-00086-PHX-ROS, 2012 WL 13018740 (D. Ariz. May
  15, 2012) .................................................................................................. 16

*Armendariz v. Found. Health Psychcare Servs., Inc.*,
  24 Cal. 4th 83 (2000) ............................................................................... 11

*Barnes v. City of Centralia*,
  943 F.3d 826 (7th Cir. 2019) ..................................................................... 7

*Beltran v. PeopleReady, Inc.*,
  No. 3:23-CV-00179-WHO, 2023 WL 3092973 (N.D. Cal. Apr. 25,
  2023) ......................................................................................................... 10

*Caviani v. Mentor Graphics Corp.*,
  No. 19-CV-01645-EMC, 2019 WL 4470820 (N.D. Cal. Sept. 18,
  2019) ........................................................................................................... 8

*Cir. City Stores, Inc. v. Ahmed*,
  283 F.3d 1198 (9th Cir. 2002) ................................................................. 14

*Circuit City Stores, Inc. v. Najd*,
  294 F.3d 1104 (9th Cir. 2002) ................................................................... 6

*Coinbase, Inc. v. Suski*,
  602 U.S. 143 (2024) ............................................................................ 7, 8

*Discover Bank v. Superior Court*,
  36 Cal. 4th 148 (2005), *abrogated in part by AT&T Mobility LLC v.
  Concepcion*, 563 U.S. 333 (2011) ......................................................... 17

*Heckman v. Live Nation Entertainment, Inc.*,
  120 F.4th 670 (9th Cir. 2024)....................................2, 10, 11, 15, 18

*Heckman v. Live Nation Ent.*,
  686 F. Supp. 3d 939 (C.D. Cal. 2023)..................................................... 16

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Kohler v. Whaleco, Inc.*,
  No. 24-CV-00935-AJB-DEB, 2024 WL 4887538 (S.D. Cal. Nov.
  25, 2024) ................................................................................................... 13, 15, 16

*Molloy v. RK Netmedia, Inc.*,
  No. CV-09-02614-MMM-AGRX, 2009 WL 10669608 (C.D. Cal.
  Oct. 8, 2009) ......................................................................................................... 18

*Oracle Am., Inc. v. Myriad Grp. A.G.*,
  724 F.3d 1069 (9th Cir. 2013) ............................................................................... 8

*Pierre v. IEC Corp.*,
  No. 8:22-CV-01280-FWS-JDE, 2023 WL 3551962 (C.D. Cal. Mar.
  14, 2023) ............................................................................................................... 10

*Salgado v. Carrows Restaurants, Inc.*,
  33 Cal. App. 5th 356 (2019) ............................................................................... 3, 4

*Sanfilippo v. Match Grp. LLC*,
  No. 20-55819, 2021 WL 4440337 (9th Cir. Sept. 28, 2021) ............................... 4

*Tinder v. Pinkerton Security*,
  305 F.3d 728 (7th Cir. 2002) ................................................................................. 6

*United States v. Hove*,
  52 F.3d 233 (9th Cir. 1995) ................................................................................... 6

*Webb v. Auto Knight Motor Club, Inc.*,
  No. 22-56153, 2023 WL 6058492 (9th Cir. Sept. 18, 2023) ............................... 4

*Wiseley v. Amazon.com, Inc.*,
  709 F. App'x 862 (9th Cir. 2017) ....................................................................... 16

## **Other Authorities**

Fed. R. Civ. P. 12 ................................................................................................... 12

Fed R. Civ. P. 56 ..................................................................................................... 6

## **PRELIMINARY STATEMENT**

Petitioners' Opposition either ignores or mischaracterizes every material fact relevant to where—if anywhere—petitioners' claims should be arbitrated. Its opening salvo inaccurately contends that no less than "[f]our tribunals" have already determined petitioners' disputes must be arbitrated in JAMS. In fact, ***no*** court or arbitrator has decided the issues presented by Epson's cross-motion.

- The cited *Mondigo* and *Galgon* cases were decided before Epson's current EULA—which contemplates mass arbitrations in FedArb instead of JAMS—even existed, and involved different arbitration terms. Those cases did *not* involve the central questions here: which EULA applies and which arbitral forum (if any) is appropriate.

- JAMS determined only that certain petitioners submitted an arbitration claim such that JAMS could open files and charge fees; it did not reach the question at the core of this dispute—reserved to the Court (not JAMS)—of whether Epson's current EULA applies to petitioners' claims.

- And the state court has not "decided" anything at this stage; it issued a proposed statement of decision and, in response to Epson's objections (which raise fundamental errors such as deciding issues expressly excluded from the trial), has set a hearing to further consider the issues in that case, which involves none of the petitioners here.

Petitioners don the same blinders in arguing Epson has not met its burden in moving to compel additional discovery or proceeding to a summary trial on which EULA, if any, governs petitioners' claims. Simply ignoring inconvenient facts and evidence, petitioners claim Epson has raised a mere "metaphysical doubt" as to which EULA applies. But they cannot credibly dispute that Epson has made a *prima facie* case—***at least***—that its current EULA applies to some (if not all) petitioners' claims. Indeed, the evidence that petitioners argue compels the conclusion that Epson's *prior* EULA applies is no different in nature or quality than the evidence Epson has

submitted that Epson's *current* EULA applies. By permitting limited discovery, the Court can reliably determine, for all petitioners, if they can proceed to arbitration and in what forum. Labaton has provided no plausible reason why such discovery should not occur (other than to complain of it being "individualized" when it has thousands of clients asserting *individual* claims—thus any annoyance is entirely of Labaton's own making). The Court should grant Epson's cross-motion for limited discovery and ultimately its motion to compel arbitration to FedArb.

Finally, for two-plus years, petitioners' only gripe with FedArb has been the obvious one: it deprives them of the threat of millions of dollars of individual arbitration filing fees that are Labaton's sole weapon. Emboldened by the Ninth Circuit's decision in *Heckman v. Live Nation Entertainment, Inc.*, 120 F.4th 670 (9th Cir. 2024), petitioners now strain to pigeonhole FedArb's procedures into the facts of *Heckman*, raising a host of meritless complaints about FedArb they have never previously identified. Petitioners' manufactured complaints pale in comparison to the procedural shenanigans at issue in *Heckman*, and nothing in *Heckman* suggests that FedArb's arbitration framework should be struck down as unconscionable. Notably, petitioners fail to acknowledge a dispositive difference between this case and *Heckman*: Epson's current EULA ***provides an opt-out provision*** from the arbitration provision petitioners now criticize. Any petitioners who were unhappy with FedArb's procedures had 30 days to exclude themselves from the arbitration and waiver of class proceedings in the EULA; of course, petitioners did not exercise this right because Labaton's whole strategy depends on the threat of millions of dollars in arbitration filing fees, and it thus has no interest in its "clients" being able to pursue relief in the courts. Petitioners should not now be heard to complain of contract provisions they had a right to opt out of and, accordingly, this alternate ground for denying Epson's cross-motion should also be rejected.

## ARGUMENT

### I.    PETITIONERS SEEK TO AVOID THEIR AGREEMENT TO THE CURRENT EULA BY DISREGARDING MATERIAL FACTS AND WELL-ESTABLISHED LAW

As an initial matter, and tainting several of petitioners' flawed arguments, petitioners consistently disregard the very existence of Epson's current EULA, as if the only questions before the Court concern interpretation and application of Epson's previous EULA. Petitioners justify their willful ignorance of the current EULA by disregarding or misstating both material facts and well-established law.

*First*, petitioners repeatedly contend that Epson created and imposed the current EULA ***in response to*** Labaton's first threat of mass arbitration on August 31, 2022, ECF No. 38-1 ¶ 4, but this claim disregards the undisputed evidence Epson proffered in support of its motion. Ms. Shukla, a knowledgeable Epson employee, testified that "Epson finalized the now-current EULA in April 2022 and began the process of rolling this EULA out to customers in connection with firmware updates." ECF No. 34-16 ¶ 15. The rollout of the now-current EULA was completed such that "[a]ny software of firmware update for an Epson cartridge printer occurring after September 2022 would have been accompanied by the now-current EULA." *Id.* ¶ 16. Put differently, the rollout of the now-current EULA *began* with the finalization of the current EULA in April 2022 and was comprehensive, across all relevant Epson cartridge printers, by the end of September 2022. In any event, the current EULA is not a ***reaction*** to petitioners' claims since it was finalized ***months*** before Labaton sent its first threatening notice letter to Epson.

*Second*, even if petitioners were correct that Epson only updated its EULA after Labaton put Epson on notice of some of its clients' claims (and it is not), it makes no difference as a matter of law. California law is clear that arbitration agreements can apply retroactively. *See, e.g.*, *Salgado v. Carrows Restaurants, Inc.*, 33 Cal. App. 5th 356, 361 (2019) ("[T]he contention that an agreement to arbitrate a dispute must pre-date the actions giving rise to the dispute is misplaced. Such a suggestion runs

contrary to contract principles which govern arbitration agreements. [A]n arbitration agreement may be applied retroactively to transactions which occurred prior to execution of the arbitration agreement.") (internal citations and quotation marks omitted); *accord Webb v. Auto Knight Motor Club, Inc.*, No. 22-56153, 2023 WL 6058492, at *2 (9th Cir. Sept. 18, 2023) (non-precedential) (that plaintiffs did not see agreement until after events giving rise to action occurred was immaterial because it did not impact assent to arbitration); *Sanfilippo v. Match Grp. LLC*, No. 20-55819, 2021 WL 4440337, at *2 (9th Cir. Sept. 28, 2021) (pre-existing employment claims fell within scope of later-entered arbitration agreement). ***This is true even where the arbitration agreement is entered into <u>after a party has asserted notice of their claim.</u>*** *See Salgado*, 33 Cal. App. 5th at 358-59, 361-62 (arbitration agreement signed after plaintiff filed lawsuit asserting subject claims was enforceable, subject to further factual findings relating to circumstances of assent). Accordingly, petitioners' complaint that Epson's introduced its current EULA after petitioners first gave notice of their claims is legally irrelevant.[1]

## II.    <u>THERE IS AMPLE EVIDENCE HUNDREDS OF PETITIONERS AGREED TO EPSON'S CURRENT EULA</u>

Petitioners also misstate the record and the law when they claim Epson "cannot demonstrate that any petitioner agreed to the [current] SLA." Opp. at 9:6-7. Epson does not dispute (and indeed, candidly explained in its moving papers) that it does not maintain records of consumers' acceptance of its EULAs. But that does not mean it

---

[1] Petitioners' complaint is particularly misplaced because Epson's current EULA allows consumers to opt out of the arbitration provision and class action waiver. ECF No. 34-22 § 22.7. To the extent any petitioners had already given notice of their claims when they accepted the terms of Epson's current EULA (as petitioners contend), Labaton could have advised them to exercise their opt out rights, but did not (presumably because opting out of arbitration is inconsistent with its strategy of leveraging the threat of millions of dollars in arbitration filing fees to force a settlement divorced from the merits of petitioners' substantive claims).

has not offered evidence that petitioners have accepted its current EULA. To the contrary, Ms. Shukla's declaration explains that Epson finalized the current EULA in April 2022 and began its roll-out which, although it does not occur on a consistent schedule, was rolled out across-the-board as of October 2022. ECF No. 34-16 ¶¶ 15-17. Ms. Shukla further testified that, although Epson consumers are not required to update their firmware over the course of their printer ownership, Epson recommends that consumers do so and that firmware updates serve salutary purposes. *Id.* ¶¶ 7, 13. Ms. Shukla also confirmed that, as part of the firmware update process, consumers are required to accept Epson's then-current EULA. *Id.* ¶¶ 14-16. This testimony confirms that, although Epson does not have records of specific petitioners accepting the current EULA—or any EULA, for that matter—numerous consumers, including any petitioners who accepted firmware updates on or after October 1, 2022, are bound by Epson's current EULA.

Petitioners attempt to undermine this testimony by contending that consumers can update firmware on their control panels without assenting to the current EULA, citing an excerpt of a "WF-C878R Series User's Guide" available at the "download4.epson.biz" website (not affiliated with Epson) and an article entitled "How to Update Epson Printer Firmware: Comprehensive Guide *for Businesses*" (emphasis added) by a business technology consultant. ECF No. 38-1 ¶ 36 n.8; Morgan Reply Decl. Ex. 15. There are at least three problems with this argument. *First*, petitioners' cited sources relate to the use of WF-C878R Series in a business setting maintained by a "system administrator," ECF No. 38-19 & 38-1 ¶ 36 n.8, which is typically different from consumer usage. The ***consumer*** version of the user guide for the WF-C878R printer, available on Epson's consumer-facing website, says nothing about updating firmware from the control panel and instead directs consumers to the updater process described by Ms. Shukla. *See* Morgan Reply Decl. Ex. 16 at 57-58. *Second*, petitioners' cited article referencing control panel updates (in a business setting) confirms that using "[t]he Epson Software Updater"—the process

described by Ms. Shukla—"is *the easiest and most recommended method for updating your printer's firmware*." *Id.* Ex. 15 (emphasis added). *Third*, even as described by petitioners, updating firmware via the control panel still directs users to the current EULA, such that the hypothetical consumer who both (i) disregards the consumer user manual on Epson's own website in favor of third party websites about Epson printers in business contexts and (ii) ignores advice the software updater is the "easiest and most recommended method" for updating firmware may ***still*** accept the current EULA even if they use the control panel to update their firmware. ECF No. 38-1 ¶ 36.

In addition to Ms. Shukla's testimony, the attestations of ***hundreds*** of petitioners also confirm they accepted Epson's current EULA. *See* Mot. § II. Specifically, despite Labaton's efforts to obtain favorable testimony in a check-the-box form attestation, 639 petitioners were unwilling and/or unable to affirm they did not update their firmware on or after October 1, 2022, when any update after that date would require them to accept Epson's current EULA. *Id.* Petitioners shrug off this evidence, claiming that petitioners could have declined to check this box for reasons other than the falseness of the statement. But an inability or failure to deny a material fact *does* support the truth of that fact. *Cf.* Fed. R. Civ. P. 56(e) ("If a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: . . . (2) consider the fact undisputed for purposes of the motion[.]"). Petitioners' cited authorities are readily distinguishable and provide no basis for ignoring these 639 petitioners' attestations. *See, e.g.*, *United States v. Hove*, 52 F.3d 233, 237 (9th Cir. 1995) (concerning questioning by criminal investigators and before grand jury); *Circuit City Stores, Inc. v. Najd*, 294 F.3d 1104, 1109 (9th Cir. 2002) (employee's silence *did* constitute consent).

Similarly, petitioners' cited cases do not support their claim that Epson cannot prove any petitioners accepted Epson's current EULA. For example, in *Tinder v. Pinkerton Security*, 305 F.3d 728, 735-36 (7th Cir. 2002), the court held that an employee's "general denial" that she accepted an arbitration agreement was

insufficient to defeat her employer's evidence that it sent the arbitration agreement—which did not require the employee's assent—to her with her paycheck. Taken together, Ms. Shukla's testimony regarding the implementation of Epson's current EULA and the process by which it is agreed to by consumers resembles the type of process-based showing by the employer in *Tinder* that the court found could not be trumped by a mere "general denial"—which is all Labaton's attorney argument amounts to. Epson's showing—as confirmed by hundreds of petitioners' own attestations—far exceeds the "metaphysical doubt" found insufficient in petitioners' inapposite cases. *See, e.g.*, *Barnes v. City of Centralia*, 943 F.3d 826, 832 (7th Cir. 2019) (section 1983 case having nothing to do with arbitration agreements).

Finally, petitioners ignore that the evidence they are party to Epson's *prior* EULA is similarly based on evidence of Epson's product installation processes coupled with other facts. Specifically, petitioners do not testify that they assented to Epson's prior EULA; those petitioners who have submitted attestations testify only that they purchased a printer and "set up and used" their Epson printers "shortly after purchasing" them. *See, e.g.*, ECF No. 28-3. Just like Epson, petitioners are relying on circumstantial evidence of Epson's *processes* (requiring acceptance the Epson's EULA at setup) plus evidence from petitioners regarding events that would require EULA assent (the fact of setup) to contend the parties are bound by an Epson EULA; petitioners are not relying on direct evidence that Epson and any specific petitioner entered into Epson's EULA. Petitioners cannot have it both ways: If Epson's evidence of acceptance of its current EULA is insufficient to establish a right to compel arbitration according to its terms, so too is petitioners' evidence of acceptance of Epson's *prior* EULA.

## III.   *COINBASE* SQUARELY APPLIES TO THIS DISPUTE

Based on their disregard of the very existence of the current Epson EULA and all evidence that it applies to petitioners (*see* Sections I and II), petitioners take the extraordinary position that the Supreme Court's clear precedent in *Coinbase, Inc. v.*

*Suski*, 602 U.S. 143 (2024) does not govern here. Epson has established the existence
and potential application of the current EULA with at least equal force as petitioners
have established the existence and potential application of Epson's prior EULA.
Epson's current EULA plainly delegates threshold questions of arbitrability to *courts*;
the prior EULA delegates them to JAMS. Thus, as in *Coinbase*, "the question whether
these parties agreed to arbitrate can be answered only by determining which contract
applies," that is, "whether the parties agreed to send the given dispute to arbitration"
and "per usual, that question must be answered by a court." *Id.* at 150. *Coinbase*
squarely applies and reserves the question of which EULA applies for decision by the
Court alone. Petitioners' cited authorities (a) did not involve express delegations of
threshold arbitrability questions to the Court (as here) and (b) predate *Coinbase*, and
thus do not suggest otherwise. *See, e.g.*, *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724
F.3d 1069, 1076 (9th Cir. 2013) (assigning arbitrability dispute to arbitrator in absence
of express delegation of arbitrability questions to court); *Caviani v. Mentor Graphics
Corp.*, No. 19-CV-01645-EMC, 2019 WL 4470820, *5 (N.D. Cal. Sept. 18, 2019) (no
express delegation of issue to court, inferring delegation to arbitrator from
incorporation of JAMS rules).

## IV.  THE COURT CAN DECIDE WHETHER PETITIONERS MET THE EULAS' IDENTICAL PRE-FILING REQUIREMENTS

As shown in Epson's cross-motion, this Court should also determine whether
petitioners complied with the identical pre-filing dispute resolution requirements
imposed by both EULAs. Epson's current EULA explicitly and exclusively reserves
to the Court "any disagreements regarding compliance with Section 22.2 [stating
initial dispute resolution requirements]." ECF No. 34-22 § 22.2. Even to the extent
the Court concludes (after limited discovery) that the prior EULA applies to any
petitioners, the Court should still reach the question whether those petitioners (who
provided no different information or notice before filing their claims than petitioners
who are subject to the current EULA) complied with the EULAs' pre-filing dispute

EPSON'S REPLY ISO ITS CROSS-MOTION FOR DISCOVERY AND TO COMPEL ARBITRATION IN FEDARB

resolution requirements. Both EULAs provide that the parties' efforts to resolve disputes informally must occur "before submitting a claim for arbitration." *Arnoff*, ECF No. 1-9 at 10-11 ¶ 2 (stipulated fact). Thus, JAMS plainly does not have jurisdiction over an issue that, by the terms of the agreement, must occur before any claim can be submitted to an arbitrator, and it makes no sense for two decisionmakers to decide a concededly identical issue (potentially inconsistently). Except to fall back on the prior EULA's delegation clause, petitioners offer no response to these arguments.

## V.    PETITIONERS DO NOT IDENTIFY ANY BASIS TO DENY DISCOVERY

Contrary to petitioner's characterization, the discovery Epson seeks is hardly "burdensome," and Labaton's groaning that it is "individualized"—when Labaton is the architect of a litigation strategy based entirely on the threat of thousands of *individual* arbitrations—is laughable. Opp. at 11:7-8. Petitioners' claim they cannot be compelled to produce basic evidence—such as photographs of serial numbers and firmware version numbers for their printers—to determine whether they have a right to arbitration at all and, if so, under which EULA and in which forum finds no support in the law. Indeed, petitioners' entire argument that Epson is not entitled to discovery is based on their erroneous contention that Epson has not presented evidence that any petitioner accepted Epson's current EULA. As explained in Section II, Epson has presented *at least* enough evidence to warrant discovery and require a summary trial on these issues.

Moreover, petitioners completely ignore that discovery is also needed to confirm *their* claim they are all parties to the *prior* Epson EULA, particularly given the numerous "holes" and affirmative misrepresentations Epson has already identified in their submissions to date. *See* Mot. at 10-12, 17-18. For example, the uncontroverted evidence shows some petitioners are fraudsters who submitted Epson printer serial numbers they copied from image searches on the Internet. *Id.* at 11-12.

Petitioners' sole response to these revelations has been to withdraw those petitioners' claims. Morgan Reply Decl. Ex. 17. These examples of blatant fraud confirm Labaton has not done nearly enough to verify the basic facts that determine if any EULA applies to each petitioner and, if so, which one; the limited discovery Epson seeks is essential to filling these gaps in Labaton's diligence. *See, e.g., Beltran v. PeopleReady, Inc.*, No. 3:23-CV-00179-WHO, 2023 WL 3092973, at *8-9 (N.D. Cal. Apr. 25, 2023) (allowing discovery to fill "obvious holes in each party's evidence").[2] The Court should permit limited discovery before deciding which EULA applies (if any) to any individual petitioner.

## VI.    DELEGATION TO FEDARB PURSUANT TO EPSON'S CURRENT EULA IS NOT UNCONSCIONABLE

In the alternative, and inspired by the Ninth Circuit's recent decision in *Heckman v. Live Nation Entertainment, Inc.*, 120 F.4th 670 (9th Cir. 2024), petitioners devote nearly half their opposition to arguing that FedArb's provisions are substantively and procedurally unconscionable on the basis of procedures they never previously claimed are unfair. Although petitioners try their best to squeeze FedArb and its rules into *Heckman*'s fact pattern, the differences between the mass arbitration organization in *Heckman*—called "New Era"— and FedArb are stark. Indeed, New Era appeared irretrievably partisan from the beginning: the defendants' attorneys in *Heckman*—Latham & Watkins LLP—"show[ed] a 'remarkable degree of coordination'" in devising New Era's "set of procedures to be followed" in mass arbitrations, 120 F.4th at 677 (internal citations omitted), and the defendants were New Era's first subscribers, signing on even before New Era published its mass

---

[2]  Petitioners' attempted distinctions of *Beltran* and *Pierre v. IEC Corp.*, No. 8:22-CV-01280-FWS-JDE, 2023 WL 3551962 (C.D. Cal. Mar. 14, 2023) fail because they are based on the erroneous claim that Epson has produced *no* evidence that the current EULA applies to any petitioners; beyond this argument, petitioners are merely identifying different factual disputes at issue in each case.

arbitration procedures. *Id.* There are no similar allegations that either Epson or its counsel are operating in cahoots with FedArb, and FedArb is only one of several professional, neutral arbitration organizations (including AAA and JAMS[3] that has recognized the need for additional frameworks to address the scourge of mass arbitrations. There is nothing inherently improper or unfair in such frameworks and, as explained below, the current EULA's assignment of mass arbitrations to FedArb is neither substantively nor procedurally unconscionable (***both*** of which must be shown under California law to establish unconscionability). *See, e.g.*, *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000) (agreement to arbitrate is unconscionable only if both "procedural and substantive unconscionability" are present.).

### A.    FedArb's Mass Arbitration Framework Is Not So Unfair to One Side as to Be Substantively Unconscionable

Turning to petitioner's complaints about substantive unconscionability, most boil down to quibbles that FedArb's rules should elaborate further. For example, Petitioners complain that FedArb "determines when 20 or more individual claims by employees or consumers are submitted for arbitration by or with the assistance or coordination of the same law firms or organizations and where the claims are subject to a common set of factual and legal issues" without explaining how it will determine "assistance or coordination." Opp. at 14:6-11. Petitioners offer no hypothetical situation of where how this framework could or would run unfairly amok absent a

---

[3] *See, e.g.*, Morgan Reply Decl. Ex. 18 (https://www.adr.org/mass-arbitration) ("Special Mass Arbitration Supplementary Rules were developed specifically to streamline the administration of large volume filings involving the same or related party, parties, and party representatives."); *id.* Ex. 19 (https://www.jamsadr.com/mass-arbitration-procedures) ("The filing of dozens, hundreds or even thousands of individual claims may create administrative burden and onerous fees, as well as delay and potential unfairness to all Parties, all of which may impair the integrity of the Arbitration process.").

defined term, and it certainly could not here, where there is no dispute that (i) Labaton is counsel of record for all petitioners in these cases who have filed arbitration demands; and (ii) the arbitration demands are concededly identical except for the personal identifiers for each claimant. It is unclear what unfairness could turn on the lack of an express definition of "assistance or coordination."[4]

Similarly, petitioners highlight the only "asymmetrical procedural right" they can come up with—relying on the Ninth Circuit's criticism of New Era's rules for providing an impermissible, unilateral right of appeal of grants of injunctive relief— without considering whether a bilateral procedural requirement would even make sense. Specifically, petitioners complain that FedArb is "worse" than New Era in this regard because "[i]t provides that *defendant* (but *not* a claimant) has a right to 'fil[e] a Pre-Filing Fee Motion which can expressly raise a defense of 'lack of arbitrability' or failure to state a claim." Opp. at 15:9-13. Petitioners contend that to be anything short of "undeniably substantively unconscionable," FedArb must offer claimants a "pre-fee option for a determination of arbitrability or the merits." *Id.* But this contention is absurd: Encouraging motions to *find* arbitrability in advance would be wasteful and contrary to how the American legal system works; tribunals decide issues that are in dispute, not each and every issue that *might* be disputed when the respondent appears. Likewise, it is not clear what early motion a *claimant* could bring on "the merits" other than a summary judgment motion; there is no plaintiff-side equivalent to a Rule 12(b)(6) motion, and allowing "pre-fee" affirmative summary judgment motions by claimants would be fraught with issues, not least of which widespread futility because so many would require denial pending discovery. If there

---

[4]  Indeed, JAMS's "Mass Arbitration Procedures and Guidelines" is similar. JAMS defines a mass arbitration as multiple claims against "the same Party or related Parties by individual Claimants represented by either the same law firm or law firms *acting in coordination*." Morgan Reply Decl. Ex. 19 (JAMS Procedures 1(c)). Like the FedArb Framework, the JAMS Procedures do not define "coordination." *Id.*

*were* proper, equivalent early motions for claimants, perhaps FedArb should adopt equivalent pre-fee options, but an arbitration provider's rules are not substantively unconscionable simply because they do not turn legal procedure on its head for the sake of "equivalency."

As a final example of petitioners trying to cast FedArb as akin to New Era, petitioners complain about supposed gaps in FedArb's procedures—most notably regarding how panels or single arbitrators are selected or challenged—without factoring in FedArb's general arbitration rules, which are not in conflict and therefore not preempted by the Mass Arbitration Framework. *See* ECF No. 34-4 at 3; Morgan Reply Decl. Ex. 20. These general rules fill many of the omissions cited by petitioners, such as provisions for disclosures and disqualifications. *See, e.g.*, Morgan Reply Decl. Ex. 20 at Rule 7. Even in their totality, petitioners' complaints add up to a laundry list of petty criticisms of a set of rules by petitioners who have no interest in understanding it. That does not make the rules substantively unconscionable.

### B.    <u>No Aspect of the Current EULA Is Procedurally Unconscionable</u>

Nor is any aspect of Epson's current EULA procedurally unconscionable. As an initial matter, there is a crucial distinction between the arbitration provision in Epson's current EULA and the arbitration provision in *Heckman* that goes directly to issues of fairness and swiftly disposes of petitioners' complaints regarding any procedural unconscionability. Specifically, unlike in *Heckman*, Epson's current EULA provides a 30-day opportunity to opt out of its arbitration and class action waiver provisions altogether. ECF No. 34-33 § 22.7. This opt-out opportunity substantially undermines any claim of unfairness or unconscionability. *See, e.g.*, *Kohler v. Whaleco, Inc.*, No. 24-CV-00935-AJB-DEB, 2024 WL 4887538, at *7 (S.D. Cal. Nov. 25, 2024) (arbitration agreement allowing consumers to opt out through written notice within 30 days was not "adhesive" and thus not unconscionable, distinguishing *Heckman*). Petitioners simply ignore this provision of Epson's current EULA and its significance.

Petitioners' procedural unconscionability arguments fail in any event. As explained above, there is no merit to petitioners' false claim that Epson amended its EULA in response to petitioners' claims, as occurred in *Heckman*. Rather, the uncontroverted evidence is that Epson finalized the amendments to the EULA **months** before Labaton served Epson with its first notice of claims. Further, there was a stark difference between Ticketmaster's implementation of its amended terms in *Heckman* and Epson's implementation of the current EULA here. In *Heckman*, Ticketmaster purported to make its new terms binding on any user of its website, including as to prior purchases, simply by the user's continued use of the website, even though ticket purchasers could not access previously-purchased tickets without such use. In contrast, Epson's current EULA applies to consumers only upon their **affirmative acceptance of the agreement** (a click-wrap, rather than a browse-wrap, license) and, although they may forego the benefits of *future* firmware updates if they do not accept that agreement, their printers continue to function precisely as designed when purchased regardless of their choice. Moreover, as noted, petitioners can accept Epson's current EULA, receive firmware updates, and still opt out of the EULA's arbitration provision, which alone defeats any claim of procedural unconscionability. *See, e.g.*, *Cir. City Stores, Inc. v. Ahmed*, 283 F.3d 1198, 1199 (9th Cir. 2002) (no unconscionability, where employee "was not presented with a contract of adhesion because he was given the opportunity to opt-out of the Circuit City arbitration program by mailing in a simple one-page form").

Petitioners' claim that the FedArb Rules constitute an unfair surprise fares no better. Contrary to petitioners' claim, there is no inconsistency between the current EULA's statement that it "waives your right to participate in class actions or class arbitrations" and FedArb's rules; as noted above, FedArb retains individualized proceedings for individual issues of facts and law even though (as in the multi-district litigation mass tort context) common issues of fact and law are first decided by FedArb's MDL Panel (in a proceeding in which claimants are represented by lead

counsel which here would be their very same lawyers at Labaton). *See, e.g.*, ECF No. 34-2 at 2 ("To the extent that there are individual facts and circumstances that need to be resolved, every attempt will be made to resolve individual facts by use of a claim form. However, if individual adjudications are required, then these claims will be remanded for resolution by individual arbitrations as set forth below."). FedArb does not subject petitioners to "batching" at all, and a claimant pursuing relief in FedArb is no more part of a "class" action or arbitration than is an individual plaintiff in a mass tort. There is no inconsistency between the class action litigation/arbitration waiver in Epson's current EULA and proceeding in FedArb. *Cf. Kohler*, 2024 WL 4887538, at *8 (rejecting argument arbitration agreement "unconscionably contains 'contradictory and misleading terms' by prohibiting disputes brought on a 'mass action basis' in the Class Action Waiver . . . but also requiring "batch arbitration" in mass arbitration scenarios).

*Heckman* is, again, readily distinguishable in this regard. In *Heckman*, the Ninth Circuit found Ticketmaster's terms "affirmatively misleading" because "they specifically state that all claims will be resolved by 'individual arbitration,' and not 'in any purported class or representative proceeding," when New Era's procedures contemplated "batching," treatment in a "'class or representative' fashion," and individual treatment *only* upon a showing of "*no* Common Issues of Law and Fact." 120 F.4th at 682-83. Unlike Epson's notice of class action/class arbitration waiver and FedArb's rules, Ticketmaster's terms and New Era's procedures were in plain and direct conflict.

Finally, petitioners devote an extensive portion of their argument to casting FedArb's rules in the most confusing light possible. Of course, counsel can make the simplest frameworks sound confusing or highlight typos or minor inconsistencies in any set of rules. Indeed, the JAMS procedures petitioners wish to enforce could be presented in a similar fashion. What matters is whether a party can reasonably understand the framework to which they are agreeing, which is undeniable here. *See,*

*e.g.*, *Wiseley v. Amazon.com, Inc.*, 709 F. App'x 862, 864 (9th Cir. 2017) (customer had reasonable opportunity to understand which rules would apply to his arbitration claims despite his claim that it was unclear and confusing due to renaming of sections in the AAA rules); *22QCentral v. Pharm E., Inc.*, No. CV-11-00086-PHX-ROS, 2012 WL 13018740, at *2 (D. Ariz. May 15, 2012) (plaintiff's claim of confusion over which rules applied to arbitration agreement based on references to AAA, National Academy of Arbitrators, and National Mediation Board insufficient to avoid enforcement of arbitration clause); *compare also Kohler*, 2024 WL 4887538, at *7 (rejecting analogy to *Heckman*'s criticism of arbitration rules as "riddled with typos" and "so dense, convoluted and internally contradictory to be borderline unintelligible where terms of use previewed arbitration agreement "in bolded, capitalized font" on first page of agreement) *with* ECF No. 34-22 (Epson's current EULA) at 1 (**"IF YOU ARE LOCATED IN THE UNITED STATES, SECTIONS 19-23 OF THIS DOCUMENT APPLY TO YOU. SECTION 22 CONTAINS A BINDING ARBITRATION PROVISION THAT LIMITS YOUR ABILITY TO SEEK RELIEF IN A COURT BEFORE A JUDGE OR JURY, AND WAIVES YOUR RIGHT TO PARTICIPATE IN CLASS ACTIONS OR CLASS ARBITRATIONS FOR CERTAIN DISPUTES. AN 'OPT-OUT' IS AVAILABLE UNDER SECTION 22.7 FOR THOSE WHO WISH TO BE EXCLUDED FROM THE ARBITRATION AND CLASS WAIVER.").**

Here too, *Heckman* is instructive as to what courts have previously found problematic: arbitration procedures that evolve *in response to litigation*. *Heckman v. Live Nation Ent.*, 686 F. Supp. 3d 939, 956 (C.D. Cal. 2023) (disapproving of "New Era's repeated attempts to clarify and amend [its] Rules in response to this litigation"). Although petitioners complain that FedArb retains power to change its rules (as do courts, as does JAMS, as does the AAA), there is no claim here that FedArb has changed any of its rules either in response to this litigation or at Epson's behest.

### C.     Petitioners' *Discover Bank* Argument Is Misdirected and Irrelevant

Petitioners' reliance on *Discover Bank v. Superior Court*, 36 Cal. 4th 148, 153 (2005), *abrogated in part by AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011), is misplaced. In *Discover Bank*, the California Supreme Court held that, "at least under some circumstances, the law in California is that class action waivers in consumer contracts of adhesion are unenforceable, whether the consumer is being asked to waive the right to class action litigation or the right to classwide arbitration." 36 Cal. 4th at 153. In *Concepcion*, however, the United States Supreme Court overruled *Discover Bank*, finding that California law as stated in that case conflicted with, and was therefore preempted by, the FAA. *See, e.g.*, 563 U.S. at 344 ("The overarching purpose of the FAA . . . is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings. Requiring the availability of classwide arbitration interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA."). Petitioners' new-found reliance on *Discover Bank* is apparently inspired the Ninth Circuit's conclusion in *Heckman* that, because class arbitration is not protected by the FAA, the FAA does not preempt the rule in *Discover Bank* under *Concepcion* in the context of mass arbitration rules. The *Heckman* Court explained this history and its holding:

> In *Discover Bank*, the California Supreme Court held that class action waivers in consumer contracts of adhesion are unconscionable under California law. The United States Supreme Court later held in *Concepcion* that the FAA preempts any application of the *Discover Bank* rule that poses an "obstacle" to objectives of the FAA. As applied to the Expedited/Mass Arbitration procedures set forth in Ticketmaster's Terms and New Era's Rules, the *Discover Bank* rule poses no such obstacle, because those procedures do not apply to the forms of arbitration covered by the FAA. We therefore hold under *Discover Bank* that ***the Terms' class action waiver is unconscionable and unenforceable***.

*Heckman*, 120 F.4th at 689 (emphases added). *Heckman*'s application of *Discover Bank* is irrelevant to this case for two important reasons.

First and foremost, this Court does not need to (and should not) reach the issue of whether the class action waiver in Epson's current EULA is unconscionable or unenforceable because no one is seeking to enforce the class action waiver. In *Heckman*, the plaintiffs filed a class action lawsuit; defendants sought to enforce the class action waiver in the Ticketmaster terms to compel that class action to arbitration. 120 F.4th at 676. Thus, the enforceability of the class action waiver in Ticketmaster's terms was squarely before the *Heckman* court. Here, in contrast, petitioners have never expressed ***any*** interest pursuing a class action; indeed, pursuing class-wide relief would defeat Labaton's business model by forcing it to litigate or arbitrate the merits of its spurious claims instead of attempting to extort a settlement based on millions of dollars in individual filing fees. Because the class action waiver is not at issue in this case, the Court should not wade into this complex and unsettled area of the law. *See, e.g.*, *Molloy v. RK Netmedia, Inc.*, No. CV-09-02614-MMM-AGRX, 2009 WL 10669608, at *4 n.38 (C.D. Cal. Oct. 8, 2009) (court need not decide whether California court could compel arbitration under Miami-Dade forum/venue selection provision because no party had asked court to order dispute to arbitration).[5]

Second, even if the Court were to reach this issue, the FedArb procedures are readily distinguishable from the New Era procedures (as explained above). Not only are FedArb's procedures not substantively or procedurally unconscionable, *see* Sections VI.A&B, they also do not amount to "reverse class arbitration," as petitioners contend, Opp. at 22:1, because they provide avenues for individualized dispute resolution, such as individualized claim forms and individualized proceedings after common issues of fact and law are determined. ECF No. 34-4. Accordingly, the

---

[5]  By Epson's calculation, the *Heckman* defendants have until January 27, 2025 to file a petition for *certiorari* in the United States Supreme Court.

1   Ninth Circuit's distinction of *Concepcion* in *Heckman* does not apply here. *Heckman*
2   provides no support for invalidating the current EULA's class action waiver
3   provision, much less its arbitration provision.

4           **D.      Petitioners' Circular Severance Argument Should Be Rejected**

5           Finally, petitioners' claim that Section 22.6 alone of the current EULA should
6   be severed depends entirely on their erroneous argument that the FedArb procedures
7   adopted in that section are substantively and procedurally unconscionable. Because
8   petitioners have failed to establish that FedArb's procedures are unconscionable, *see*
9   Sections VI.A&B, there is no basis for severance. Moreover, although petitioners'
10  argument under *Discover Bank* is unclear, to the extent petitioners are invoking
11  "California's longstanding *Discover Bank* rule, which prohibits arbitration
12  agreements that effectively act as class action waiver in consumer contracts of
13  adhesion" here, Opp. at 22:18-20; Section VI.C, above, Epson's current EULA
14  clearly states that any finding that its class action waiver is unenforceable, "then the
15  arbitration provision set forth above in Section 22.3 shall be deemed null and void in
16  its entirety ***and the parties shall be deemed to have not agreed to arbitrate disputes***."
17  ECF No. 34-22 § 22.5. If petitioners prevail on that argument, then, the relief is not
18  arbitration in JAMS but no arbitration at all.

19                                    **CONCLUSION**

20          For all the foregoing reasons, the Court should grant Epson's cross-motion for
21  limited discovery and to compel arbitration in FedArb in its entirety.

22  DATED:  December 23, 2024          QUINN EMANUEL URQUHART &
23                                     SULLIVAN, LLP

24

25                                     By    */s/ Shon Morgan*
26                                        Shon Morgan
27                                        Attorneys for Respondent Epson America,
                                          Inc.
28

## **LOCAL RULE 11-6.2 CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Epson America, Inc., certifies that this brief contains 6,215 words, which complies with the word limit of Local Rule 11-6.1.

DATED:  Decmeber 23, 2024          QUINN EMANUEL URQUHART &
                                   SULLIVAN, LLP


By _____ */s/ Shon Morgan* _____
   Shon Morgan
   Attorneys for Respondent Epson America,
   Inc.